Christopher Julian SOLOMON, Appellant,

v.

The STATE of Texas.

No. 73,459.

Court of Criminal Appeals of Texas.

June 20, 2001.

Richard N. Dodson, Texarkana, Attorney for Appellant.

Alwin A. Smith, Assist. DA, Matthew Paul, State's Atty., Austin, Attorneys for State.

## OPINION

KELLER, P.J., delivered the opinion of the Court in which WOMACK, KEASLER, HERVEY, and HOLCOMB, JJ., joined.

Appellant was convicted in June 1999 of a capital murder committed on September 19, 1997.[1] Pursuant to the jury's answers to the special issues set forth in Texas Code of Criminal Procedure art. 37.071 §§ 2(b) and 2(e), the trial judge sentenced appellant to death.[2] Direct appeal to this

---

1. Tex. Penal Code Ann. § 19.03(a).

2. Article 37.071 § 2(g). Unless otherwise indicated all future references to Articles refer to the Code of Criminal Procedure.

Court is automatic.[3] Appellant raises nine points of error. We will affirm.

## I. SUFFICIENCY OF THE EVIDENCE

### A. Guilt

■ In point of error two, appellant complains that the State presented insufficient evidence to corroborate accomplice witness testimony. Three witnesses are relevant to resolving appellant's complaint here: Javarrow Young, Virginia Marie Wood, and Christina Davis. According to all three witnesses, appellant, Julius Murphy, Young, Wood, and Davis attended a party at Murphy's mother's home on the afternoon of September 17, 1997. Young testified that appellant engaged him in a conversation about a robbery. Murphy was present during this conversation but did not talk. Appellant later proceeded to show Young a pistol from the glove compartment of Wood's car. Appellant then passed the gun around to several others, including Young and Murphy. The gun was subsequently returned to appellant, who pocketed it.

Young, Wood, and Davis all testified that two vehicles of people traveled together to visit some out-of-town friends. One of the vehicles, a truck, was driven by Young's girlfriend and contained as passengers Young, Young's daughter, and a friend named Phil. The other vehicle, a car, was driven by appellant and contained as passengers Murphy, Wood, and Davis. Upon returning from their out-of-town trip, the two vehicles stopped at a gas station. Young testified that he conversed with appellant. Appellant related that he had seen a man with car trouble on the side of the road, and the man had waved, indicating he needed assistance. Appellant told Young that he was going to "jack him"—a statement Young interpreted as meaning appellant was going to rob the man on the road. Young declined to get involved in the robbery but told appellant "to do what they got to do, and go." Wood and Davis saw appellant engage in a conversation but did not hear what transpired.

Young saw appellant's car stop by the man's car on the side of the road. Young then drove his truck to a different gas station and waited. When appellant's car failed to appear after twenty to thirty minutes, Young drove his truck towards town. On the way, he saw the victim, Jason Erie, lying on the ground. Young flagged down a passing ambulance and directed it to the scene. Later, he talked to the police.

According to Wood and Davis, appellant drove Wood's car, Wood sat in the front passenger seat, Murphy sat behind appellant, and Davis sat behind Wood. Murphy and Davis were not getting along because they had been fighting earlier on the trip. Appellant pointed to the side of the road to Erie, who was apparently having car trouble. Appellant gave Erie's car a "jump," and Erie paid appellant five dollars. According to Davis, as Erie headed away, appellant told Murphy that Erie had a lot of money in his wallet and said something to the effect of "we should jack him." At first, Murphy resisted the idea, but appellant goaded Murphy until he agreed. Murphy then said, "Okay, give me the gun. I'll do it." Appellant then told Wood to take the gun out, Wood removed the gun from the glove compartment, and Murphy grabbed the gun. According to Wood, after Erie paid appellant five dollars, Murphy told her to hand him the gun and she complied.

Wood heard appellant tell Murphy that he should shoot and kill the man because "that's how I got caught the last time."

---

**3.** Article 37.071 § 2(h).

Davis was not listening to the conversation but she heard the last phrase "that's how I got caught the last time." Davis testified that she grabbed Murphy and told him not to go, but Murphy pushed her away and exited the car. Davis put her head down and heard a gun fire. Wood saw Murphy shoot the victim and take his wallet. According to Wood, appellant and Murphy later bragged about the bullet shell remaining inside the gun's chamber, and appellant coldly bragged that he was going to keep the five dollars given by Erie as a souvenir. Both Davis and Wood testified that, sometime after the incident with Erie, Davis ran from the car and contacted the police.

Appellant, Murphy, and Wood were subsequently charged with capital murder. Appellant and Murphy did not testify. Wood, Davis, and Young all testified as witnesses for the prosecution. The jury charge included an accomplice as a matter of law instruction for Wood and an accomplice as a matter of fact instruction for Davis.

Appellant contends that Wood and Davis were accomplices, whose testimony required corroboration. And he contends that Young's testimony should be disregarded because he gave inconsistent statements to the police. Appellant concludes: "Without the testimony of Ms Davis and Ms. Wood[ ], the evidence is both legally insufficient, as well as factually insufficient, to support the conviction." Appellant further contends that, even if credence is given to Young's testimony regarding the robbery, without the testimony of Wood and Davis, there was no evidence that appellant did anything to aid or encourage the murder.

 The accomplice-witness rule provides:

A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense.[4]

In conducting a sufficiency review under the accomplice-witness rule, a reviewing court must eliminate the accomplice testimony from consideration and then examine the remaining portions of the record to see if there is any evidence that tends to connect the accused with the commission of the crime.[5] "Tendency to connect" rather than rational sufficiency is the standard: the corroborating evidence need not be sufficient by itself to establish guilt.[6] The accomplice-witness rule is not based upon federal or state constitutional notions of sufficiency; there simply needs to be "other" evidence tending to connect the defendant to the offense.[7]

 Appellant's argument contains several flaws. First, appellant erroneously assumes Davis to be an accomplice. The only evidence supporting the notion that Davis was an accomplice was her presence at the scene of the crime. But mere presence during the commission of a crime is not enough to make one an accomplice.[8]

4. Article 38.14.

5. Cook v. State, 858 S.W.2d 467, 470 (Tex.Crim.App.1993)(citing Thompson v. State, 691 S.W.2d 627, 631 (Tex.Crim.App. 1984)).

6. Cathey v. State, 992 S.W.2d 460, 462 (Tex. Crim.App.1999), cert. denied, 528 U.S. 1082, 120 S.Ct. 805, 145 L.Ed.2d 678 (2000).

7. Id. at 462–463.

8. Medina v. State, 7 S.W.3d 633, 641 (Tex. Crim.App.1999), cert. denied, 529 U.S. 1102, 120 S.Ct. 1840, 146 L.Ed.2d 782 (2000).

While the trial court gave the jury an accomplice as a matter of fact instruction regarding Davis, that instruction was not raised by the evidence. Even if the instruction had been raised by the evidence, the jury would have been free to believe that Davis was not in fact an accomplice. Because Davis was not an accomplice, her testimony could be used as corroboration. At least two facts revealed in Davis's testimony linked appellant to the crime: 1) appellant formed the idea of robbing Erie and goaded Murphy into committing the robbery, and 2) appellant commanded Wood to hand the gun to Murphy.

■ Appellant also errs in contending that we should ignore Young's testimony. Appellant implicitly concedes that Young was not an accomplice but believes the testimony should be ignored on the ground that Young lacked credibility as a witness. But the credibility of a witness is an issue for the jury to decide, and we have held in the past that credibility attacks on a witness do not defeat the corroborating effect of the witness's testimony.[9] Moreover, appellant's contention amounts to an attempt to superimpose a legal or factual sufficiency review upon the accomplice witness standard—a contention we rejected in *Cathey v. State*.[10]

Finally, appellant erroneously assumes that the evidence connecting him to the robbery did not also connect him to the murder. We have previously held a defendant's presence at the scene and participation in the underlying offense to be sufficient to connect him to the capital murder for accomplice-witness rule purposes.[11] Young's testimony that appellant said he intended to "jack" the victim was some evidence connecting appellant to the robbery and placing him at the scene of the capital murder. Point of error two is overruled.

### B. Future Dangerousness

■■ In point of error eight, appellant contends that the evidence was legally insufficient to support the jury's answer to the "future dangerousness" special issue.[12] In evaluating the sufficiency of the evidence to support the jury's answer to that issue, we utilize the standard articulated in *Jackson v. Virginia*: we view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found beyond a reasonable doubt that there is a probability that appellant would commit criminal acts of violence constituting a continuing threat to society.[13]

We have outlined a non-exclusive list of factors that may be considered in determining whether a defendant constitutes a continuing threat to society:

(1) the circumstances of the capital offense, including the defendant's state of mind and whether he was acting alone or with other parties;

(2) the calculated nature of the defendant's acts;

(3) the forethought and deliberateness exhibited by the crime's execution;

---

9. *Fuentes v. State*, 991 S.W.2d 267, 271 (Tex. Crim.App.), *cert. denied*, 528 U.S. 1026, 120 S.Ct. 541, 145 L.Ed.2d 420 (1999).

10. *See Cathey, supra.*

11. *Cook*, 858 S.W.2d at 470.

12. The issue, found in Article 37.071, § 2(b)(1), asks: "whether there is a probabili-

ty that the defendant would commit criminal acts of violence that would constitute a continuing threat to society."

13. *Jackson v. State*, 33 S.W.3d 828, 830 (Tex.Crim.App.2000)(citing *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).

(4) the existence of a prior criminal record and the severity of the prior crimes;

(5) the defendant's age and personal circumstances at the time of the offense;

(6) whether the defendant was acting under duress or the domination of another at the time of the commission of the offense;

(7) psychiatric evidence; and

(8) character evidence.[14]

 We shall address the first three factors together. These factors all deal with the circumstances of the offense. We have held that the facts of the offense alone can be sufficient to show future dangerousness.[15] In the present case, Wood testified that appellant told Murphy to kill the victim because "that's how I got caught the last time." That statement by appellant was strongly probative of future dangerousness. Appellant claims that the statement was not corroborated. Even if we were to indulge in the questionable assumption that the accomplice-witness rule had any application to the punishment phase of a trial,[16] Wood's testimony regarding the offense on trial was adequately corroborated in the guilt phase. In his brief, appellant contends that corroboration should not only connect the defendant to the offense but also connect the defendant to a particular state of mind when the victim was killed. The law imposes no such requirement.

 Moreover, Davis testified that appellant goaded Murphy into committing the robbery, and she confirmed the last part of the statement related by Woods concerning getting "caught the last time." In addition, Young testified that appellant formed the intent to rob Erie before stopping alongside the victim's car. So, the evidence shows that appellant planned the crime in advance. Further, evidence that appellant bragged about the chambered shell and bragged about keeping five dollars as a souvenir show an absence of remorse. Evidence showing a lack of remorse constitutes some support for a finding of future dangerousness.[17]

Regarding the fourth factor, the State showed that appellant had committed several prior offenses. In 1996, he shot at a house because a friend would not sell embalming fluid for him. In 1997, appellant shot at another person. In June of 1997, appellant and another person committed a carjacking and threatened to kill the car's owner if he called the police. For that incident, appellant was charged with aggravated robbery, and he was on bond for that offense when he committed the offense before us. This sequence of crimes shows an escalating pattern of violence that constitutes some evidence of future dangerousness.[18] In addition, committing the offense while on bond is a significant fact showing a bold and dangerous disrespect for the law. It is similar to committing an offense while on parole—which we

**14.** *Reese v. State,* 33 S.W.3d 238, 245 (Tex. Crim.App.2000).

**15.** *Nenno v. State,* 970 S.W.2d 549, 552 (Tex. Crim.App.1998).

**16.** We have specifically held the accomplice-witness rule to be inapplicable to extraneous offenses presented during the punishment phase. *Farris v. State,* 819 S.W.2d 490, 507 (Tex.Crim.App.1990), *cert. denied,* 503 U.S. 911, 112 S.Ct. 1278, 117 L.Ed.2d 504 (1992).

**17.** *Dewberry v. State,* 4 S.W.3d 735, 743 (Tex. Crim.App.1999), *cert. denied,* 529 U.S. 1131, 120 S.Ct. 2008, 146 L.Ed.2d 958 (2000); *Trevino v. State,* 991 S.W.2d 849, 854 (Tex.Crim. App.1999).

**18.** *Reese,* 33 S.W.3d at 247; *Jackson,* 33 S.W.3d at 838.

have held has some tendency to show future dangerousness.[19]

Regarding the sixth factor—whether the defendant acted under the domination of another—the evidence showed that appellant acted as a leader, giving orders concerning the robbery and murder. Finally, the State presented testimony from a neuropsychologist that appellant posed a danger of future violence. The evidence was amply sufficient to support the jury's affirmative answer to the future dangerousness special issue. Point of error eight is overruled.

## II. EVIDENTIARY MATTERS

### A. Lay Witness Opinion Testimony

▇ In point of error four, appellant contends that the trial court erred in permitting a lay witness to give an opinion about the ultimate issue in the case. During Davis's testimony at the guilt phase of trial, the following colloquy occurred:

> [PROSECUTOR]: Christina, let me just ask you this question. You were in the car that night. Who was the person in that car responsible for Mr. Erie getting robbed, in your opinion?
>
> [DAVIS]: In my opinion?
>
> [PROSECUTOR]: Yes.
>
> [DAVIS]: Chris.
>
> [DEFENSE COUNSEL]: That calls for a legal conclusion. Object to that. Invading the province of the jury.
>
> THE COURT: Overruled.
>
> [PROSECUTOR]: The defendant was?
>
> [DAVIS]: Yes. To me, it was.

Appellant contends that Davis improperly rendered a lay opinion on the ultimate issue of the case and engaged in mere speculation as to appellant's mental state.

In *Fairow v. State*[20] we discussed the admissibility, under the predecessor of the current rule[21], of lay testimony concerning the culpable mental state with which an act is committed. We said,

> [W]hile a witness cannot possess personal knowledge of another's mental state, he may possess personal knowledge of facts from which an opinion regarding mental state may be drawn. The jury is then free to give as much or as little weight to the opinion as it sees fit. Therefore, we conclude that once the proponent of the opinion establishes personal knowledge of the facts underlying the opinion, he has satisfied the perception requirement of Rule 701. This is so even if the opinion concerns culpable mental state.

Christina Davis had personal knowledge of the events in the car, and her testimony that appellant was responsible for the robbery was based upon that knowledge.

The second requirement of Rule 701 is that the opinion be helpful to the trier of fact to either understand the witness's testimony or determine a fact in issue. Davis's testimony here was no more than a shorthand rendition of the facts. The trial court could have properly found that her testimony was helpful to a clear understanding of her testimony or the determination of a fact in issue, and there was no error in admitting it.

---

**19.** *Trevino,* 991 S.W.2d at 854.

**20.** 943 S.W.2d 895, 899 (Tex.Crim.App.1997).

**21.** Rule 701 of the Texas Rules of Evidence provides:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

But even if we were to assume *arguendo* that the trial court erred in permitting Davis to express the opinion given here, admission of this testimony would be harmless. Texas Rule of Appellate Procedure 44.2(b) provides that a nonconstitutional error "that does not affect substantial rights must be disregarded." We have determined that substantial rights are not affected by the erroneous admission of evidence "if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect." [22]

In the present case, the jury had already heard all of the facts upon which Davis's conclusion was based. Davis did not purport to be an expert or otherwise to be in a position to possess information not already related to the jury. The opinion here added little, if any, weight to Davis's testimony. Under the circumstances, we have a fair assurance that the evidence in question did not influence the jury or had but slight effect. Point of error four is overruled.

### B. Plea Agreement with Wood

In point of error five, appellant contends that the State engaged in prosecutorial misconduct concerning Wood's testimony. At trial, Wood testified that she entered into a plea agreement with the State in which she would plead guilty to aggravated robbery, be sentenced to twenty years in prison, and truthfully testify at appellant's trial. Appellant has filed a motion to supplement the record with a docket sheet that he claims shows that Wood has yet to plead or be sentenced. Appellant suggests that Wood and the State have made a secret "sweetheart" deal in

exchange for her testimony against him. The State responds that concluding its agreement with Wood would eliminate any incentive for her to cooperate if appellant's conviction were overturned and new trial became necessary.

While Rule 34.5(c)(1) permits supplementation of an appellate record with material that has been omitted from the appellate record, the rule cannot be used to create a new appellate record.[23] Point of error five is overruled. We deny appellant's motion to supplement the record.

### C. Photographs

In point of error nine, appellant contends that the trial court erred in admitting certain photographs at the punishment stage of trial. Jerry Erie, Jr., the victim's brother, was called as a witness for the State during the punishment stage. In testimony that filled three pages, Jerry explained that the victim had a father, a wife, and two children. Jerry identified photographs depicting the victim's wedding, the victim in his sailor's uniform, the victim's children, and scenes of the victim swimming with his children. Appellant contends that the photographs constituted inadmissible victim impact evidence. He claims that the photographs were not relevant to any issue in the punishment phase, and if they were relevant, the probative value was outweighed by the danger of unfair prejudice.

We agree that the photographs were relevant only as victim impact evidence; the evidence had no other apparent purpose. We must therefore address the legal principles relevant both to photographs and to victim impact evidence. Contrary

22. *Reese,* 33 S.W.3d at 243 (quoting *Johnson v. State,* 967 S.W.2d 410 (Tex.Crim.App. 1998)).

23. *Berry v. State,* 995 S.W.2d 699, 702 n. 5 (Tex.Crim.App.1999); *Green v. State,* 906 S.W.2d 937, 939 n. 3 (Tex.Crim.App.1995).

to appellant's claims, we have held that victim impact evidence is relevant, "in the context of the mitigation special issue, to show the uniqueness of the victim, the harm caused by the defendant, and as rebuttal to the defendant's mitigating evidence." [24] Part of showing a victim's uniqueness is to humanize the victim for the jury.[25] Although we have in the past referred only to humanizing the victim, some humanizing of the family members accomplishes that purpose by impressing upon the jury that real people were in fact harmed by the victim's death. This humanizing effect is normally accomplished by the live testimony of a family member, but in the present case, most of the close family members did not testify; so, here, the photographs had the effect of humanizing the victim's family. Rather than just hear that the victim had a family, the jury was given pictures of the family members. Those pictures showed the family members as being more than just names.

The real question, then, is whether the probative value of the photographs was outweighed by the danger of unfair prejudice under Texas Rule of Evidence 403.[26] We generally consider the following factors in any prejudice versus probative value analysis:

(1) how probative is the evidence;

(2) the potential of the evidence to impress the jury in some irrational, but nevertheless indelible way;

(3) the time the proponent needs to develop the evidence; and

(4) the proponent's need for the evidence.[27]

In the present case, the probative value of the evidence was relatively low. While having some tendency to humanize the victim by humanizing his family, the photos were not particularly strong evidence of this or of the victim's death's impact on family members. But the photos' potential to impress the jury in an irrational, but indelible way was also low. The primary danger of unfair prejudice from victim impact testimony is its tendency to encourage the jury to engage in "measuring the worth of the victim compared to other members of society." [28] The photos of the family members did nothing to encourage the jury to make such comparisons; nothing in those photos singled out the victim or his family as being different from other families. The photo of the victim in his sailor's uniform may have had some slight tendency to encourage comparisons, but the uniform simply reflected the victim's occupation, which, under the circumstances, does not appear to be unduly prejudicial. In addition, the photographs were not gruesome nor were they designed to shock the jury or cause an extreme emotional reaction based upon irrelevant facts.[29]

Regarding the third factor, there were seven photographs presented within three pages of testimony; so, the length of time

---

**24.** *Mosley v. State*, 983 S.W.2d 249, 262 (Tex. Crim.App.1998), *cert. denied*, 526 U.S. 1070, 119 S.Ct. 1466, 143 L.Ed.2d 550 (1999).

**25.** *Id.*

**26.** Rule 403 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the

jury, or by considerations of undue delay, or needless presentation of cumulative evidence.

**27.** *Reese*, 33 S.W.3d at 240.

**28.** *Mosley*, 983 S.W.2d at 262.

**29.** *See Reese*, 33 S.W.3d at 242 (photograph of fetus in a casket played on jury's sympathies based upon facts that should not have been relevant to its decision).

needed to present the evidence was short. Finally, the State had some need for the testimony. The State did not procure testimony from the victim's wife and children. The photographs were the only exposure the jury had to these close members of the victim's family. After considering the relevant factors, we conclude that the trial court was within its discretion in determining that the photographs' probative value was not substantially outweighed by the danger of unfair prejudice. Point of error nine is overruled.

### III. JURY CHARGE

### A. Independent Impulse

In point of error one, appellant contends that the trial court erred in failing to submit his requested instruction on "independent impulse." Relying upon *Mayfield v. State*,[30] appellant contends that he is entitled to such an instruction if he is charged with conspiracy liability for the offense under Texas Penal Code § 7.02(b) and the evidence "raises a question whether the offense actually committed was perpetrated in furtherance of the felony, or was one which should have been anticipated by the Defendant."

§ 7.02(b) sets forth the theory of conspiracy liability:

If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose, and was one that should have been anticipated as a result of the carrying out of the conspiracy.

In accordance with the law of conspiracy liability, the trial court gave instructions in the abstract and application portions of the guilt-innocence jury charge tracking the statutory language:

If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose, and was one that should have been anticipated as a result of the carrying out of the conspiracy. Capital murder, murder, robbery, and attempted robbery are felonies.

\* \* \*

Now, if you find from the evidence beyond a reasonable doubt that on or about the 19th day of September, 1997, in Bowie County, State of Texas that Julius Jerome Murphy, did then and there intentionally cause the death of an individual, JASON ERIE, by shooting him with a firearm, and the said Julius Jerome Murphy was then and there in the course of committing or attempting to commit the offense of robbery of JASON ERIE, and if you further find from the evidence beyond a reasonable doubt that acting with intent to promote the commission of the robbery of JASON ERIE, the said CHRISTOPHER JULIAN SOLOMON, acted with intent to promote, or assist, the commission of the robbery of JASON ERIE, by encouraging, soliciting, directing, aiding, or attempting to aid Julius Jerome Murphy in the commission of the said robbery, if any, *and that the shooting of JASON ERIE, by Julius Jerome Murphy, if there was such, was done in furtherance of the conspiracy to rob JASON ERIE, if any, and was an offense that should have been anticipated as a result of carrying out the conspiracy, then you*

---

30. 716 S.W.2d 509 (Tex.Crim.App.1986).

*will find the Defendant guilty of Capital Murder.*

Unless you so find beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the defendant CHRISTOPHER JULIAN SOLOMON, of Capital Murder.

(Italics added; capitalization in original).

Appellant argues that these instructions were not enough to cover the "independent impulse" issue and contends that the trial court should have submitted the following additional instruction:

If you believe from the evidence, beyond a reasonable doubt, that on or about September 19, 1997, Julius Murphy, in the course of committing robbery of Jason Erie, murdered Jason Erie, and that the evidence raises a question as to whether the murder of Jason Erie was perpetrated in furtherance of the robbery, or that the murder should have been anticipated by Defendant Christopher Solomon, you will find the Defendant, Christopher Solomon, not guilty of capital murder.

With little explanation, we held in *Mayfield* that a defendant was entitled to an "independent impulse" instruction in a conspiracy liability case when raised by the evidence.[31] That holding, however, is no longer viable in light of our more recent decision in *Giesberg v. State.*[32] In *Giesberg,* we held that defendants were not entitled to a defensive instruction on "alibi" because alibi was not an enumerated defense in the penal code and the issue was adequately accounted for within the general charge to the jury.[33] Because alibi was merely a negation of elements in the State's case, its inclusion would be super-

fluous, and in fact, would be an impermissible comment on the weight of the evidence.[34] Likewise, there is no enumerated defense of "independent impulse" in the Penal Code, and appellant's proposed defensive issue would simply negate the conspiracy liability element of the State's case. All that is required, then, is for the appropriate portions of the jury charge to track the language of § 7.02(b). To the extent that *Mayfield* holds to the contrary, it is overruled. Point of error one is overruled.

## B. Accomplice Testimony

In point of error three, appellant contends that the trial judge erred in failing to submit, in both the guilt and punishment phase charges, an instruction that accomplices could not corroborate each other's testimony. However, as we have explained in connection with point of error two, Wood was the only accomplice in the case. Although the trial court submitted an instruction concerning Davis being an accomplice as a matter of fact, the submission of the instruction was erroneous because the issue was not raised by the evidence. Since there was only one accomplice in the case, the evidence did not raise an issue regarding accomplices corroborating each other. Point of error three is overruled.

## C. Lesser Included Offense

In point of error six, appellant contends that the trial court erred in refusing to submit the lesser-included offense of robbery. A defendant is entitled to the submission of a lesser offense if a two-pronged test is met: (1) the lesser included offense must be included within

---

**31.** *Id.* at 515.

**32.** 984 S.W.2d 245 (Tex.Crim.App.1998), *cert. denied,* 525 U.S. 1147, 119 S.Ct. 1044, 143 L.Ed.2d 51 (1999).

**33.** *Id.* at 248–251.

**34.** *Id.* at 250.

the proof necessary to establish the offense charged, and (2) some evidence must exist in the record that would permit a jury rationally to find that if the defendant is guilty, he is guilty only of the lesser offense.[35] Because robbery is contained within the proof for murder in the course of a robbery, appellant has met the first prong. However, he fails to meet the second prong.

In considering whether there is some evidence in the record that a defendant, if guilty, is guilty only of the lesser offense, "[i]t is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense. Rather, there must be some evidence directly germane to a lesser-included offense for the factfinder to consider before an instruction on a lesser-included offense is warranted."[36] Because appellant was charged with a conspiracy theory of liability for murder in the course of a robbery, the second prong is met only if there is evidence in the record showing either (1) there was no murder, (2) the murder was not committed in furtherance of a conspiracy, or (3) the murder should not have been anticipated.

█ In his brief, appellant does not directly address the State's theory of the offense. Instead, appellant simply contends that the evidence raises the possibility that he committed only a robbery because Wood and Davis were accomplices and Young's testimony indicated only that appellant intended to rob the victim. However, whether appellant intended to kill the victim before the robbery took place is irrelevant if the relevant liability elements were established at the time the crime was committed.[37] There is no dispute that Jason Erie was shot and killed. The uncontradicted testimony at trial was that Murphy intentionally shot and robbed the victim. Uncontradicted testimony also shows that appellant told Murphy to kill the victim because "that is how I got caught the last time." Appellant points to no evidence raising the lesser offense of robbery through any of the three possible ways it could have been raised in this case, nor have we found any such evidence ourselves. No evidence indicates that a murder did not occur. There is no evidence that the victim's death was not in furtherance of a conspiracy to commit robbery. And finally, there is no evidence that the victim's death was not anticipated, much less any evidence that the death should not have been anticipated. Appellant was not entitled to an instruction on the lesser offense of robbery. Point of error six is overruled.

### D. Anti–Parties Charge

█ In point of error seven, appellant claims that the trial court erred in failing to submit an anti-parties instruction in the punishment jury charge. Appellant concedes that the "anti-parties" special issue found in Article 37.071 § 2(b)(2) was submitted to the jury. He contends, however, that the trial court should have *sua sponte* submitted an additional instruction telling the jury to ignore the parties instructions in the guilt jury charge.[38] We have previously decided this issue adversely to appellant's position.[39] Point of error seven is overruled.

**35.** *Rousseau v. State*, 855 S.W.2d 666, 673 (Tex.Crim.App.), *cert. denied*, 510 U.S. 919, 114 S.Ct. 313, 126 L.Ed.2d 260 (1993).

**36.** *Skinner v. State*, 956 S.W.2d 532, 543 (Tex. Crim.App.1997), *cert. denied*, 523 U.S. 1079, 118 S.Ct. 1526, 140 L.Ed.2d 677 (1998).

**37.** *Fuentes*, 991 S.W.2d at 273.

**38.** Appellant did not request such an instruction.

**39.** *McFarland v. State*, 928 S.W.2d 482, 516–517 (Tex.Crim.App.1996), *cert. denied*, 519 U.S. 1119, 117 S.Ct. 966, 136 L.Ed.2d 851 (1997).

Finding no reversible error, we affirm the judgment of the trial court.

MEYERS, J., filed a concurring opinion in which JOHNSON, J., joined.

PRICE, HOLLAND, and JOHNSON, JJ., concurred in the result.

MEYERS, J., filed this concurring opinion, joined by JOHNSON, J.

At the punishment phase of appellant's trial, the State admitted photographs of the victim's wedding, the victim in his sailor's uniform, the victim's children, and of the victim swimming with his children. Appellant claims the photos are not relevant to any of the three issues at the punishment phase. The majority says the photos are relevant to the mitigation issue. *Majority opinion* at 365. The majority follows precedent in holding the photographs relevant to the mitigation issue. *Mosley v. State*, 983 S.W.2d 249, 262 (Tex.Crim.App.1998)("victim impact and victim character evidence are admissible, in the context of the mitigation special issue, to show the uniqueness of the victim, the harm caused by the defendant, and as rebuttal to the defendant's mitigating evidence"), *cert. denied*, 526 U.S. 1070, 119 S.Ct. 1466, 143 L.Ed.2d 550 (1999). But the majority does not address the relevance of the photos to the other two punishment issues—future dangerousness and anti-parties. While there is precedent to support a holding that, in *certain circumstances*, victim impact and victim character evidence is relevant to the question of future dangerousness, those circumstances are not presented in this case. Moreover, there is no authority on the question of the relevance of victim impact evidence to the anti-parties issue.

*Mosley* stated, in dicta, that victim impact and victim character evidence was "patently irrelevant" to future dangerous-

ness, assuming the defendant was unaware, at the time of the crime, of the victim's character or of the impact that the victim's deaths would have on others. *Id.* at 261 n. 16. Thus, "[v]ictim impact and character evidence of which a defendant is aware at the time he commits the crime is necessarily relevant to his future dangerousness and moral culpability." *Id.* This discussion became a holding in *Jackson v. State*, 33 S.W.3d 828, 833 (Tex.Crim.App. 2000). The Court did not explain how such victim-related evidence is relevant to future dangerousness, except to state:

> It is difficult to imagine how appellant could not have reasonably foreseen the impact that the victims' deaths would have on others. The victim impact evidence, therefore, was relevant to the "future dangerousness" issue.

*Id.* (emphasis added). So (although we don't know why or how this makes it relevant), we know that if the defendant could have reasonably foreseen the impact that the victim's death would have on others, then victim related evidence is deemed relevant to the defendant's future dangerousness. In this case, there was no evidence that appellant knew the victim or the victim's family at the time he committed the crime. Therefore, the victim impact and victim character evidence is "patently irrelevant" to the question of appellant's future danger. *See Mosley*, 983 S.W.2d at 261 n. 16.

The jury was also given an anti-parties instruction at punishment in this case. They were asked to determine whether "appellant himself actually, caused the death of . . . the deceased, on the occasion in question, or, if he did not actually cause deceased's death, that he intended to kill the deceased or another or that he anticipated that a human life would be taken." *See* TEX.CODE CRIM. PROC. art. 37.071 § 2(b)(2). An anti-parties charge is appro-

priate in cases in which the jury was given a parties instruction at the guilt portion of trial. *Id.* An anti-parties charge is given at punishment for the purpose of "ensuring that a jury's punishment-phase deliberations are based solely upon the conduct of that defendant and not that of another party." *Martinez v. State,* 899 S.W.2d 655, 657 (Tex.Crim.App.1994), *cert. denied,* 516 U.S. 942, 116 S.Ct. 378, 133 L.Ed.2d 301 (1995). The relevance of victim impact and victim character evidence to the anti-parties issue has never been addressed by this Court. Evidence is "relevant" if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX.R. EVID. 401. The point of the anti-parties charge is to direct the jury's focus to the conduct or mental state of the defendant *as opposed to that of a co-defendant or accomplice.* Whether or not the defendant knew or was aware of the impact the victim's death would have on others does not have any tendency to make it more or less probable that the defendant himself, rather than an accomplice or co-defendant, "actually caused the death of the deceased or did not actually cause the death of the deceased but intended to kill the deceased or another or anticipated that a human life would be taken."

The defendant complains about the relevance of the victim-related evidence to all three of the punishment issues, not just the mitigation issue. The majority addresses the relevance only as to the mitigation issue.[1] I nonetheless concur in the result because appellant did not preserve an issue of relevance *as to any of the punishment issues.* Appellant's objection was based on Rule 403.[2] Therefore, the majority was correct to address the Rule 403 issue, but its opinion should not be read as bearing on the issue of relevance as to the future dangerousness or the anti-parties issues.

With these comments, I concur.

---

1. Granted, admission of the evidence may have been harmless as to the other punishment issues given its relevance to the mitigation issue and the failure of the defendant to request a limiting instruction in light of *Mosley. Mosley* was decided nearly a year before appellant's trial.

2. Appellant objected to the evidence as follows:

 We would just state at this stage of the trial it's the prejudicial effect versus probative, and we're not here for any question to be answered as to this. As I indicated before, maybe improperly, I have a great deal of sympathy, but I don't think it's probative as to the issue that the jury now has to decide. Appellant's objection was based on Rule 403, under which relevant evidence may nonetheless be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice...." TEX.R. EVID. 403. Rule 401, which defines "relevant evidence," makes no reference to "probative" value or "prejudicial versus probative" value.