Affirmed and Memorandum Opinion filed March 11, 2004









Affirmed and Memorandum Opinion filed March 11, 2004.

 

 

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-02-01178-CR

____________

 

COREY DEWAYNE
PHILLIPS,
Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 178th
District Court

Harris County, Texas

Trial Court Cause No. 856,244

 



 

M E M O R A N D U M   O P I N I O N

Appellant Corey DeWayne Phillips was found
guilty of the offense of capital murder, and the jury sentenced him to
confinement for life in the Texas Department of Criminal Justice, Institutional
Division.  In four points of error,
appellant claims (1) the trial court improperly admitted evidence of an
extraneous offense; (2) the trial court=s supplemental
instructions to the jury on the law of parties constituted an improper comment
on the weight of the evidence; (3) the trial court improperly denied a
requested jury instruction on independent impulse; and (4) the evidence is
factually insufficient to sustain the conviction.  We affirm.








I.   Background

On September 17, 2000, appellant and three
other individuals abducted Matthew Carter, a first-year medical student, from a
Blockbuster Video store as he returned a movie. 
The following morning, a maintenance worker for the Scottish Rite Temple
found Carter=s body in his car in the temple=s parking
lot.  Carter had been shot and killed.

On the evening Carter was murdered,
appellant was approached by Perry Williams, James Dunn, and Kinita Star
Butler.  They told appellant they were Afixing to flip@ C a slang term for
committing robberies.  Appellant went
home to change clothes and was picked up by the group about thirty minutes
later.

The four went in an Oldsmobile driven by
Williams to a grocery store and parked next to Anthony Gonzalez=s Honda
Accord.  When Gonzalez returned to his
car and opened its door, Williams stepped out of the Oldsmobile and pointed a
gun at Gonzalez.  Williams told Gonzalez
to get in the driver=s seat of the Honda and to not look at
him.  Williams crawled over Gonzalez to
get into the passenger=s seat. 
Appellant then moved from the passenger=s seat to the
driver=s seat of the
Oldsmobile.  Williams told Gonzalez to
drive the Honda.  Gonzalez exited the
parking lot of the grocery store onto South Post Oak.  As Williams was taking Gonzalez=s wallet,
necklace, and watch, Gonzalez noticed the Oldsmobile was following them.  Williams told Gonzalez to turn down a dark
road, Willowbend.  Gonzalez did so, but
then suddenly turned into a Walgreen=s parking
lot.  The Oldsmobile continued straight
on Willowbend.  Williams became nervous,
and told Gonzalez to get back on Willowbend. 
A few seconds after Gonzalez pulled back onto the street, appellant
drove the Oldsmobile up close to the Honda, honked the horn, and motioned to
Williams as if he were signaling ALet=s go.@  At this point, Williams told Gonzalez to pull
into an upcoming shopping center. 
Williams told Gonzalez to not say anything and to look towards the
driver=s window.  Williams took the keys from the Honda=s ignition, and
ran in the direction of the Oldsmobile. 
During the robbery, Williams had demanded Gonzalez=s ATM password.








After Williams got back into the
Oldsmobile, appellant drove the car to another grocery store.  Williams and Dunn went into the store to use
Gonzalez=s ATM card.  They told appellant and Butler they were
unable to get any money.  Across the
street from the grocery store was a Blockbuster Video.  Appellant drove to the Blockbuster parking
lot to wait for another victim.  

When Williams saw Carter returning the
videotape, he said twice, AI=m fixing to get
this [expletive].@ 
Williams got out of the Oldsmobile, pulled out his gun, and pushed
Carter into his Chevy Cavalier. 
Appellant drove the Oldsmobile to the parking lot of the Scottish Rite
Temple; Williams followed appellant in the Chevy, having forced Carter into the
passenger=s seat. 
After appellant stopped in the parking lot behind the temple, Williams
pulled up very close to the Oldsmobile. 
The cars were so close together that appellant had to squeeze out of the
car.  As he was getting out of the
Oldsmobile, appellant noticed that Carter was looking at him and said, AThe [expletive] is
looking at me.@ 
Appellant started telling Carter to stop looking at him, at which time
Williams shot Carter in the head. 
Appellant looked in the car and saw Carter slumped over.  Appellant told Williams, A[Expletive], you
done shot the [expletive], let=s go, let=s go.@  Appellant then reached into Carter=s car, grabbed his
backpack, and got back into the driver=s seat of the
Oldsmobile.  As he drove to a nearby gas
station where they went through Carter=s belongings,
appellant noticed Williams was nervous and told him to Ajust calm down.@  When appellant later got out of the car,
Williams gave appellant a few dollars. 
Appellant=s later comment about the money was, A[Expletive], I don=t think it was
even a couple of dollars.@








II.  
The Extraneous Offense

In his first point of error, appellant
contends the trial court erred in allowing testimony concerning an extraneous
offense in violation of rule 404(a) of the Texas Rules of Evidence.  The trial court permitted Gonzalez to testify
about the aggravated robbery committed by appellant and his co-defendants
earlier on the same evening Carter was murdered.  Officer Todd Miller, a Houston Police
Department (AHPD@) investigator,
also testified about his connecting appellant to the robbery of Gonzalez.[1]  The trial court also allowed the jury to hear
an audiotaped statement of appellant discussing his involvement in the robbery.
 We find the trial court did not
abuse its discretion in admitting evidence regarding this extraneous offense.

Upon timely objection to evidence of other
crimes, wrongs, or acts[2]
the proponent of the evidence must persuade the trial court that the extraneous
evidence tends to establish motive, opportunity, intent, identity, or one of
the other factors set out in rule 404(b). 
Montgomery, 810 S.W.2d at 387. 
If the trial court determines the offered evidence has relevance apart
from or beyond character conformity, it may admit the evidence, and instruct
the jury the evidence is limited to the specific purpose the proponent
advocated.[3]  Id. 
Admission of an extraneous offense is generally within the discretion of
the trial court as long as the trial court=s ruling is within
the zone of reasonable disagreement  Guzman
v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1999).  








Although admissible under 404(b), the same
evidence may be inadmissible under rule 403 if the probative value of such
evidence is substantially outweighed by unfair prejudice.[4]  McFarland v. State, 845 S.W.2d 824,
837 (Tex. Crim. App. 1992), cert. denied, 508 U.S. 963 (1993).  When the trial court is presented with
relevant evidence, it presumes the evidence will be more probative than
prejudicial.  Long v. State, 823
S.W.2d 259, 271 (Tex. Crim. App. 1991), cert. denied, 505 U.S. 1224
(1992).  An appellate court reviews the
trial court=s ruling on whether to exclude evidence
under rule 403 by an abuse-of-discretion standard.  Montgomery, 810 S.W.2d at 391.  However, an appellate court must do more than
decide if or whether Athe trial judge did in fact conduct the
required balancing and did not rule arbitrarily or capriciously.  The appellate court must measure the trial
court=s ruling against
the relevant criteria by which a Rule 403 decision is to be made.@  Id. at 391B92.  Thus, to determine if the trial court
operated within the boundaries of its discretion in deciding whether the
prejudice of an extraneous offense outweighs its probative value, the appellate
court must look to the Montgomery-Mozon factors.  Rankin v. State, 974 S.W.2d 707, 718
(Tex. Crim. App. 1998).  If, after taking
into consideration those factors, the record reveals it reasonably probable
that substantial unfair prejudice outweighed the probativeness of the evidence,
then the appellate court should conclude the trial court acted irrationally in
admitting the evidence and abused its discretion.  Montgomery, 810 S.W.2d at 393.

In this case, the State had the burden to
prove appellant conspired to commit a felony, and during the commission of the
felony, appellant should have anticipated a death could result.  Appellant acknowledges that the Atruly relevant
fact was whether or not [appellant] could have known, understood, or
anticipated that Williams would commit a killing in the course@ of the
robbery.  Appellant contends, however,
that the extraneous-offense evidence was not relevant to a fact of consequence
in the case and Adoes little to help illustrate whether or
not [appellant] could have known anything useful.@  We disagree.








ARelevant@ evidence is
evidence that has Aany tendency to make the existence of any
fact that is of consequence to the determination of the action more probable or
less probable than it could be without the evidence.@  Tex.
R. Evid. 401.  The State argues
the extraneous-offense evidence showed that (1) appellant knew what was going
to happen when the defendants pulled into the Blockbuster parking lot; (2)
appellant was aware Williams had a gun; and (3) appellant knew what was going
to be done with the gun.  Appellant=s participation in
a robbery with his co-defendants just prior to the robbery of Carter was
evidence that appellant conspired with his co-defendants to commit
robberies.  The extraneous-offense evidence
tended to make the facts that appellant knew what was going to happen when
Carter was abducted and that he should have anticipated the likelihood of
Carter=s murder more
probable than they would have been without the evidence.  Because the extraneous-offense evidence was
relevant to prove essential elements of the charged offense, we cannot say the
trial court=s decision to admit such evidence falls
outside the zone of reasonable disagreement.

Having determined the trial court did not
abuse its discretion in determining that the extraneous-offense evidence has
some relevance apart from showing appellant=s bad character,
we now examine whether the trial court conducted a proper rule 403
analysis.  To do so, we apply the Montgomery-Mozon
factors to the evidence.  Manning v.
State, 114 S.W.3d 922, 926 (Tex. Crim. App. 2003).  The first factor asks how compellingly the
evidence serves to make a fact of consequence more or less probable.  Id. (quoting Mozon v. State,
991 S.W.2d 841, 847 (Tex. Crim. App. 1999)). 
Under the 404(b) analysis, we found the evidence did make facts of consequence
more probable.  The evidence that
appellant knew Carter was going to be robbed when Williams got out of the
Oldsmobile and was aware Williams had a gun, along with Gonzalez=s testimony that
his assailants did not want to be seen, was very compelling evidence because it
was strong evidence of a conspiracy and proof that appellant should have
anticipated that a murder could result.








The second factor is the potential the
extraneous-offense evidence has to impress the jury Ain some irrational
but nevertheless indelible way.@  Id. 
Appellant argues that the State presented this evidence at the end of
its case, and in doing so, it would have been the last thing the jury heard
from the prosecution.  However, the State
presented this evidence at the appropriate time in its case.  In Montgomery, the Court of Criminal
Appeals found error when the court admitted extraneous-offense evidence early
in the presentation of the State=s case because the
State had not yet presented the particular events for which appellant stood
trial or other evidence relevant to proving its case.  810 S.W.2d at 395.  Having very little of the evidence before it,
the trial court was not in a position to reliably weigh the probative value of
the evidence against the State=s need for
admitting it.  Id.  

The Court of Criminal Appeals has stated
that the concern here is only with the danger of Aunfair prejudice.@  Manning, 114 S.W.3d at 927.  A>[T]he term >unfair prejudice,= as to a criminal
defendant, speaks to the capacity of some concededly relevant evidence to lure
the factfinder into declaring guilt on a ground different from proof specific
to the offense charged.=@  Id. at 928 (quoting Old Chief v.
United States, 519 U.S. 172, 180 (1997)). 
In this case, the evidence was obviously prejudicial to appellant, but
it was not unfairly prejudicial because it related directly to elements of the
offense for which appellant was charged. 
Nor did it have a great potential to impress the jury in an irrational
way.  The robbery of Gonzalez did not
result in physical injury or death, such that the jury would be incited to
convict appellant of capital murder. 
Thus, the risk that the jury would convict appellant of capital murder
solely because it believed he had committed a robbery did not substantially
outweigh the probative value of the evidence when the evidence specifically
pertained to the charged offense.

The third factor is Athe time the
proponent will need to develop the evidence, during which the jury will be
distracted from consideration of the indicted offense.@  Id. at 926 (quoting Mozon, 991
S.W.2d at 847).  The extraneous-offense
testimony consumes about thirty-four pages of the trial record.  The remaining portion of the State=s case-in-chief
consumes about 165 pages.  We do not find
the proportion of time spent detailing and proving up the extraneous-offense to
be significant. 








The fourth, and final factor, is Athe force of the
proponent=s need for this evidence to prove a fact
of consequence, i.e., does the proponent have other probative evidence
available to him to help establish this fact, and is this fact related to an
issue in dispute.@  Id.  Without evidence of a conspiracy and evidence
that appellant should have anticipated a murder could occur as a result of
carrying out the conspiracy, the State would have failed to meet its
burden.  Hence, the State=s need for this
evidence was crucial.  There is no
evidence in the record nor argument in appellant=s brief that the
State had other evidence to establish these facts.  AIf the issue is
disputed and the proponent has no other evidence to prove the fact, then the
proponent=s need for the evidence is great, and that
weighs in favor of admitting the evidence.@  Id. at 928.  

All four of the Montgomery-Mozon
factors weigh in favor of admissibility. 
Thus, the trial court did not abuse its discretion in admitting the
extraneous-offense evidence concerning the Gonzalez robbery.  We overrule appellant=s first point of
error.

III.   Factual Sufficiency

In his fourth point of error, appellant
contends the evidence is factually insufficient to support the jury=s conviction for
capital murder.  Specifically, appellant
claims the State failed to prove that he intended to cause the death of Carter
or knew that Williams was going to kill Carter. 
He maintains that, at best, the evidence shows he was guilty of aggravated
robbery or aggravated kidnaping. We affirm the jury=s verdict.








We conduct a factual-sufficiency review by
asking whether a neutral review of all the evidence demonstrates the proof of
guilt is so obviously weak as to undermine confidence in the jury=s determination or
the proof of guilt, although adequate if taken alone, is greatly outweighed by
contrary proof.  Johnson v. State,
23 S.W.3d 1, 11 (Tex. Crim. App. 2000). 
We may set aside the jury=s verdict only if
it is so contrary to the overwhelming weight of the evidence as to be clearly
wrong and unjust.  Clewis v. State,
922 S.W.2d 126, 129 (Tex. Crim. App. 1996). 
Although we review the fact-finder=s weighing of the
evidence, and we are authorized to disagree with the fact-finder=s determination,
our evaluation should not substantially intrude upon the fact-finder=s role as the sole
judge of the weight and credibility given to witness testimony.  Johnson, 23 S.W.3d at 7.  In particular, we must defer to the jury=s determination
concerning what weight to give contradictory testimonial evidence, because
resolution often turns on an evaluation of credibility and demeanor, an
evaluation better suited for jurors who were in attendance when the testimony
was delivered.  Id. at 8.  A proper factual sufficiency review Amust include a
discussion of the most important and relevant evidence that supports the
appellant=s complaint on appeal.@  Sims v. State, 99 S.W.3d 600, 603
(Tex. Crim. App. 2003).

The State charged appellant with capital
murder, alleging in the indictment that appellant did during the course of
robbing Carter Aintentionally cause the death of [Carter]
by shooting [him] with a deadly weapon, namely, a firearm.@  The jury could convict appellant of capital
murder if he carried out the killing himself or engaged in conduct that made him
criminally responsible for another=s commission of
the offense.  Tex. Pen. Code Ann. ' 7.01(a) (Vernon
2003).  Appellant could be held
criminally responsible for an offense committed by another under the law of
parties, which provides: 

If, in the attempt to carry out a
conspiracy to commit one felony, another felony is committed by one of the
conspirators, all conspirators are guilty of the felony actually committed
though having no intent to commit it, if the offense was committed in
furtherance of the unlawful purpose and was one that should have been
anticipated as a result of the carrying out of the conspiracy.

 








Tex. Pen. Code Ann. ' 7.02(b) (Vernon
2003).  Appellant was a part of a
conspiracy if, with the intent that a felony be committed, he agreed with one
or more persons that they or one or more of them would engage in conduct that
would constitute the offense and he or one or more of them performed an overt
act in pursuance of the agreement.  Tex. Pen. Code Ann. ' 15.02(a) (Vernon
2003).  Importantly, an agreement
constituting a conspiracy may be inferred from acts of the parties.  Id. ' 15.02(b).  Thus, the State had the burden to show that
appellant participated in a conspiracy to commit a felony, that during the
felony Williams intentionally killed Carter in the furtherance of the felony,
and that Carter=s murder should have been anticipated.

In support of his argument, appellant
contends he was not driving the vehicle in which Carter rode, did not possess
or fire the weapon that killed Carter, did not obtain the weapon for Williams,
did not know anyone would be harmed during the robbery, and was stunned when
Williams pulled the trigger.  Appellant
argues the State presented no testimony from any co-conspirator, no forensic
evidence linking appellant to the offense, no identification by Gonzalez that
appellant was one of the persons who robbed him before the abduction of Carter,
and no eyewitnesses to the shooting of Carter. 
However, the State introduced taped confessions of appellant concerning
the robberies of Gonzalez and Carter. 
Appellant admitted to participating in the Gonzalez robbery.  In fact, appellant=s confession
definitively linked him to the crime because, although Gonzalez was able to
identify Williams as one of the individuals who robbed him, he was unable to
identify the driver and passengers of the Oldsmobile involved in the
robbery.  

During his confession concerning the
Carter murder, appellant admitted he was picked up by Williams, Butler, and
Dunn, after being told they were Afixing to flip.@  Appellant denied knowing that meant they were
about to rob anyone.  At the time
appellant confessed his involvement in the murder, he was not aware HPD knew
about the Gonzalez robbery and appellant had not discussed that robbery with
the police.  His confession essentially
begins with being picked up by the group and driving into the Blockbuster
parking lot.  He denied knowing that when
they pulled into the parking lot someone was going to be robbed.  Appellant contended he was surprised when
Williams jumped out of the Oldsmobile to rob Carter, and did not know Williams
had a gun.  Appellant claimed that when
he was driving the Oldsmobile he was told where to drive by Butler and
Dunn.  Appellant=s confession
supplied the subsequent details of what happened when he got out of the
Oldsmobile at the Scottish Rite Temple. 
Appellant discussed Carter looking at him, Williams then pulling the
trigger, appellant getting Carter=s backpack out of
his car, appellant calming down Williams, and the subsequent rummaging through,
dividing up, and disposing of Carter=s belongings.








The State also introduced the testimony of
Darrell Stein from HPD=s firearms laboratory, who indicated that
the gun used during the Carter murder required approximately eight to
eight-and-a-half pounds of pressure to activate the trigger.  Stein said that, because of the force needed
to pull the trigger, the shooting could not have been accidental.  Moreover, the State introduced forensic
evidence that showed the gun was only one to three  inches away from Carter=s head when it was
fired by Williams.

Although appellant denied knowing that
Carter was going to be robbed, that Williams had a gun, and what Williams was
going to do with the gun, the jury heard evidence that indicated appellant
agreed to participate in robberies that evening, knew Carter was going to be
robbed, should have anticipated a murder during the robbery was possible, and
shared in the proceeds of the robbery. 
There was also evidence that indicated the defendants did not want their
faces seen by the victims during the robberies and that the murder was
committed intentionally.  Furthermore,
the weight to be given conflicting testimony lies within the sole province of
the jury, and the reviewing court must show deference to the jury=s
determination.  See Cain v. State,
958 S.W.2d 404, 408-09 (Tex. Crim. App. 1997). 
Accordingly, we conclude the jury=s verdict is not
so contrary to the overwhelming weight of the evidence as to be clearly wrong
and unjust.  We overrule appellant=s fourth point of
error.

IV.   Comment on the Weight of the Evidence








In his second point of error, appellant
argues the trial court improperly commented upon the weight of the evidence by
instructing the jury what it could consider in deciding whether appellant was
guilty as a party to the offense.  During
deliberations, the jury sent the trial court a note, asking A[o]n page 4 of the
charge, paragraph two, regarding criminal responsibility, does the promotion or
aiding in the commission of the offense have to precede or coincide with the
time of the offense or can it follow the offense.@  The trial court responded that Ain determining
whether a defendant participated in an offense as a party, the jury may examine
the events before, during, and after commission of the offense and may rely on
any actions by the defendant that show an understanding and common design to
commit the offense.@  We
find appellant did not preserve this argument for appeal.

As a prerequisite to presenting a
complaint on appeal, appellant must make a timely and specific objection to the
trial court.  See Tex. R. App. P. 33.1(a)(1).  An objection at trial not comporting with the
complaint on appeal does not preserve error for appellate review.  See Dixon v. State, 2 S.W.3d 263, 273
(Tex. Crim. App. 1998) (citing Broxton v. State, 909 S.W.2d 912, 918
(Tex. Crim. App. 1995)).  Instead, an
objection must draw the court=s attention to the
particular complaint raised on appeal.  See
Tex. R. App. P. 33.1(a)(1)(A); Little
v. State, 758 S.W.2d 551, 564 (Tex. Crim. App. 1988).

At trial, appellant objected to the
submission of the supplemental jury instruction because (1) the note was
ambiguous as to what paragraph of the written charge the jury was referring[5]
and (2) the trial court=s response did not track any statutory
language.  On appeal, appellant argues
the instruction improperly commented on the weight of the evidence in violation
of article 36.14 of the Texas Code of Criminal Procedure.  Accordingly, appellant=s issue on appeal
does not comport with his objection at trial and is waived.  We overrule appellant=s second point of
error.

V.   Denial of
Instruction on Independent Impulse








In his third point
of error, appellant complains the trial court erred in denying his request for
a jury charge on independent impulse. 
Appellant acknowledges that the Court of Criminal Appeals determined in Solomon
v. State, 49 S.W.3d 356, 367B68 (Tex. Crim.
App. 2001), that a criminal defendant is not entitled to an instruction on the
defensive theory of independent impulse. 
Nonetheless, appellant asks this court to reconsider the Court of
Criminal Appeals= holding in Solomon because (1) the
Solomon decision does not truthfully follow Geisberg v. State,
984 S.W.2d 245 (Tex. Crim. App. 1998); (2) Solomon ignores the
constitutional implications of denying a jury charge; (3) Solomon
ignores Texas constitutional problems; and (4) Solomon defies sense, good
public policy, and 125 years of common-law experience.  We decline to reconsider the Solomon opinion.  See Rodriguez v. State, 47 S.W.3d 86,
94B95 (Tex. App.CHouston [14th Dist.] 2001, pet. ref=d) (stating that
as an intermediate appellate court, we are bound to follow the law as declared
by the state=s highest courts and noting that, because
the Court of Criminal Appeals is the highest court on matters of criminal law,
when it has deliberately and unequivocally interpreted the law in a criminal
matter, we must adhere to its interpretation). 
Accordingly, we overrule appellant=s third point of
error.

Having overruled all of appellant=s points of error,
we affirm the trial court=s judgment.

 

 

 

 

/s/      Leslie Brock Yates

Justice

 

 

 

 

Judgment
rendered and Memorandum Opinion filed March 11, 2004.

Panel
consists of Justices Yates, Fowler, and Frost.

Publish
C Tex. R. App. P. 47.2(b).

 











[1]  Appellant
admitted to Officer Miller that he was the driver of the car during the
Gonzalez robbery.





[2]  At trial,
appellant objected to the admission of the extraneous-offense evidence on the
basis that it was irrelevant and because the evidence=s prejudicial value greatly outweighed any probative
value.  AOptimally
the opponent should object that such evidence is inadmissible under Rule
404(b).  An objection that such evidence
is not >relevant= . . .
although not as precise as it could be, ought ordinarily to be sufficient under
the circumstances to apprise the trial court of the nature of the complaint.@  Montgomery v. State, 810 S.W.2d 372, 387 (Tex. Crim.
App. 1991) (op. on reh=g).





[3]  The trial court
provided a limiting instruction to the jury.





[4]  An appellate
court will only conduct the second part of this analysis if the opponent made a
specific objection to the extraneous-offense evidence based on prejudice.  Montgomery, 810 S.W.2d at 389.  Here, appellant did.





[5]  On appeal,
appellant mentions his trial objection concerning the alleged ambiguity, but
only during a harm analysis.  Appellant
does not argue that the instruction actually created confusion nor does he
provide any support for his argument.  In
any event, the jury=s question quotes language directly from the second
paragraph of page four of the jury charge. 
We see no ambiguity as to which paragraph of the charge the jury=s question referred.