

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-23-00174-CR

**RUSSELL WAYNE MOORE, APPELLANT**

**V.**

**THE STATE OF TEXAS, APPELLEE**

On Appeal from the 207th District Court
Comal County, Texas
Trial Court No. CR2020-739, Honorable Glenn H. Devlin, Presiding

July 3, 2024

## MEMORANDUM OPINION[1]

Before QUINN, C.J., and PARKER and DOSS, JJ.

Appellant, Russell Wayne Moore, appeals from his conviction by jury of the first-degree felony offense of murder and the resulting life sentence. Counsel initially appointed on appeal filed a motion to withdraw supported by an *Anders*[2] brief. This court evaluated counsel's motion and brief and determined there was a potentially arguable

---

[1] Because this matter was transferred from the Third Court of Appeals, we apply its precedent when it conflicts with that of the Seventh Court of Appeals. TEX. R. APP. P. 41.3.

[2] *See Anders v. California*, 386 U.S. 738, 744, 87 S. Ct. 1396, 18 L. Ed. 2 493 (1967).

issue. It then remanded the cause to the trial court for the appointment of new counsel. Thereafter, newly appointed counsel filed a brief arguing that the record shows there is insufficient corroboration of accomplice testimony and consequently, the judgment should be reversed, and appellant should be acquitted of the offense. We affirm.

### Background

Charles Woodard was killed in January 2010. Appellant, along with several other individuals, was accused of committing an act of "vigilante justice" when they attacked Woodard after appellant came to believe that Woodard was involved in the sexual assault of his daughter, Crystal.

On the day of the murder, appellant, Crystal, Crystal's roommate Joyce, and Crystal's then-boyfriend Richard Pedraza, went to Woodard's home to confront him about the sexual assault. According to Woodard's mother, Woodard left with the group.[3] They drove to another location where Woodard got out of the car with appellant and Pedraza. Appellant had a small knife with him, and Pedraza had a large knife. The men stabbed Woodard multiple times, causing his death.

### Analysis

Through his sole issue, appellant claims the non-accomplice evidence was insufficiently corroborated and thus, could not support his conviction. He argues the "other evidence" in the case consisted only of his statements to police. While he acknowledges those statements are suggestive of "some remote consciousness of guilt,"

---

[3] The men apparently went to look for at least one other participant in the sexual assault but were unable to locate him.

he contends they are not sufficient corroboration under the law because they do not "tend to connect" him to the offense. We overrule the issue.

Accomplice witnesses have been described as "discredited" witnesses and thus, their testimony cannot furnish the basis for conviction. Under article 38.14, a conviction cannot stand on accomplice testimony unless it is corroborated by other evidence tending to connect the defendant with the offense; the evidence is insufficient if it proves merely the commission of the offense. *Cathey v. State*, 992 S.W.2d 460, 462 (Tex. Crim. App. 1999). It is not necessary that the corroborating evidence directly connect the defendant to the crime or that it be sufficient by itself to establish guilt; it need only tend to connect the defendant to the offense. *Id.* If the combined weight of the non-accomplice evidence tends to connect the defendant to the offense, the requirement of article 38.14 has been fulfilled. *Id.*

In conducting a sufficiency review under the accomplice-witness rule, a reviewing court must eliminate the accomplice testimony from consideration and then examine the remaining portions of the record to see if there is any evidence that tends to connect the accused with the commission of the crime. *Solomon v. State*, 49 S.W.3d 356, 361 (Tex. Crim. App. 2001). Each case must be judged on its own facts. *Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008). We note also that "[p]roof that the accused was at or near the scene of the crime at or about the time of its commission, when coupled with other suspicious circumstances, may tend to connect the accused to the crime so as to furnish sufficient corroboration to support a conviction." *Id.* However, "mere presence alone of a defendant at the scene of a crime is insufficient to corroborate accomplice testimony." *Id.* Likewise, motive and opportunity alone are insufficient corroboration.

3

*Hernandez v. State*, No. 03-10-00863-CR, 2013 Tex. App. LEXIS 8410, at *13 (Tex. App.—Austin July 11, 2013, no pet.) (mem. op., not designated for publication). They may, however, be considered in connection with other evidence that tends to connect the accused to the crime. *Id.*

In support of his contention that the evidence is insufficient to tend to connect him with Woodard's murder, appellant argues that the only evidence aside from accomplice witness testimony shows, at most, he had a consciousness of guilt as to the commission of assault, not murder. He points out that the medical testimony showed Woodard was stabbed thirteen times with a big knife,[4] not a small knife like appellant allegedly carried that night, no knives were recovered or connected with appellant, no physical evidence such as DNA or fingerprints tied appellant to the murder, no blood was found on appellant or on any of his possessions, there were no eyewitnesses or video evidence connecting appellant to the murder, appellant denied using a knife during the altercation with Woodard, and no one testified to any action after the murder that indicated a consciousness of guilt of murder by appellant.

Evidence aside from that provided by accomplice witness testimony included 1) appellant's motive to seriously harm or kill Woodard as revenge for Crystal's rape; 2) appellant's statement that his daughter told him she wanted her three alleged rapists killed; 3) appellant's initial failure to cooperate with police; 4) appellant's changing stories during the three police interviews in which he first claimed no involvement, later acknowledged he was present during the murder and kicked Woodard in the head, and

---

[4] Medical testimony indicated that at least some, and maybe most, of the wounds were caused by "a pretty good-sized, like, kitchen knife."

while initially claiming he did not have a knife, later claimed he did not recall having a knife; 5) appellant's repeated lies concerning the events of Woodard's murder, including knowing that one of the accomplices took a knife to the scene; 6) appellant's statement that he engaged in vigilante justice and would handle the alleged rape of Crystal "Russell Moore style";[5] 7) appellant's eventual statement that he heard Woodard say "[s]top stabbing me" on the night he was murdered and telling him to "shut the f*** up"; 8) appellant's use of the past tense when referring to Woodard even though he had not been informed by police of Woodard's death;[6] 9) Woodard's mother's statement that Woodard left with appellant on the day he was killed; 10) testimony from an investigator that he saw a wound on appellant's hand that was consistent with an injury one would receive if striking someone; and 11) medical testimony showing Woodard had injuries to his forehead, nose, and cheek consistent with being kicked or punched in the face.

One must also realize that the trial court submitted a party charge. Through it, appellant was susceptible to conviction for murder committed by another, like Pedraza, if he solicited, encouraged, aided, or attempted to aid the other person. Again, there was evidence from appellant himself of wanting to dispense justice "Russell Moore style," his gathering with others, including Pedraza, to do so, and admitting to kicking the victim in the head while his version of justice was being dispensed. That too corroborates, if not establishes, his culpability as one encouraging or aiding a murder committed by another.

---

[5] According to officer testimony, this meant appellant "wanted to beat an individual down and bring them to basically the doorstep of death, and then turn him over to law enforcement and let us handle the rest of it." This, the officer testified, indicated to him that appellant "wanted to commit serious bodily injury on a person."

[6] When confronted, appellant said his son received a call about Woodard's death and that was how he knew.

We conclude the non-accomplice evidence corroborates appellant's involvement in the murder of Woodard. Article 38.14 of the Texas Code of Criminal Procedure requires that corroborating evidence *tend* to connect appellant with the offense committed—in this case, murder. It is not a requirement that the corroborating evidence directly connect appellant to the crime or that it be sufficient in and of itself to establish guilt. *Cathey*, 992 S.W.2d at 462. Accordingly, we affirm the judgment of the trial court.

Brian Quinn
Chief Justice

Do not publish.