NO. 07-02-0327-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

JULY 25, 2003

_____

BILLY TYRONE REED, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 121ST DISTRICT COURT OF TERRY COUNTY;

NO. 4791; HONORABLE KELLY G. MOORE, JUDGE

_____

Before JOHNSON, C.J., CAMPBELL, J., and BOYD, S.J.[1]

In this appeal, appellant Billy Tyrone Reed challenges his conviction of possession of a controlled substance in an amount of more than four grams but less than 200 grams, with the intent to deliver. His punishment was assessed by the trial court at 35 years confinement in the Institutional Division of the Department of Criminal Justice. In mounting

_____

[1]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't Code Ann. §75.002(a)(1) (Vernon Supp. 2003).

his challenge, he presents a single issue for our determination in which he argues the trial evidence was insufficient to corroborate the accomplice testimony of Anthony Miller and was, therefore, insufficient to sustain his conviction. Disagreeing with that proposition, we affirm the judgment of the trial court.

The thrust of appellant's challenge in this appeal is, as he states, that the evidence is insufficient to corroborate the accomplice testimony of Anthony Miller. He does not contest that if the evidence sufficiently corroborates the accomplice testimony, the evidence is sufficient to sustain the conviction. Our discussion, therefore, is limited to the question of whether the evidence sufficiently corroborates Miller's testimony. Article 38.14 of the Code of Criminal Procedure provides that a conviction cannot be had upon the testimony of an accomplice witness unless that testimony **tends** to corroborate that testimony. Tex. Code Crim. Proc. Ann. art. 38.14 (Vernon 1979). The test for sufficient corroboration is to eliminate from consideration the accomplice testimony and then examine the other inculpatory evidence to ascertain whether the remaining evidence tends to connect the defendant with the offense. *Burks v. State*, 876 S.W.2d 877, 887 (Tex. Crim. App. 1994), *cert. denied,* 513 U.S. 1114, 115 S.Ct. 909, 130 L.Ed.2d 791 (1995). The non-accomplice evidence does not have to directly link appellant to the crime, nor does it alone have to establish his guilt beyond a reasonable doubt, but rather, the non-accomplice testimony merely has to tend to connect appellant to the offense. *McDuff v. State*, 939 S.W.2d 607, 613 (Tex. Crim. App. 1997). Tendency to connection rather than

rational sufficiency is the standard, thus the corroborating evidence need not be sufficient by itself to establish guilt. *Solomon v. State*, 49 S.W.3d 356, 361 (Tex. Crim. App. 2001).

When an accused is charged with unlawful possession of a controlled substance, the State must prove two elements: 1) the accused exercised care, control and management over the contraband, and 2) that the accused knew the matter was contraband. *Martin v. State*, 753 S.W.2d 384, 387 (Tex. Crim. App. 1988). However, possession of the contraband need not be exclusive and evidence that the accused jointly possessed the contraband with another is sufficient. *Id.*

We agree with appellant that Anthony Miller is an accomplice as a matter of law. Thus, because of the question we must decide, it is necessary to briefly review the non-accomplice testimony. Brownfield Police Detective David Cox testified that on November 8, 2001, he received an anonymous telephone call that appellant was selling drugs at 302 West Warren in Brownfield. He contacted Investigator Jason Johnson of the Estacado Narcotics Task Force. A controlled buy was set up, a search warrant for the house was obtained, and Officer Cox, together with Brownfield Detective Roger Baker, set up video surveillance on the premises. On the date in question, from 9:45 p.m. to 11:30 p.m., the officer operated a police video camera across the street from the house at 302 West Warren Street. The surveillance team made a video tape during that time and kept a log about the activity at the house. During the time of the surveillance, Cox averred appellant's blue Cadillac automobile was parked at the house. It was also parked there the next day while the search warrant was being executed. The officer testified that during the time of

3

the surveillance, 12 different vehicles drove up and stayed for an average of less than three minutes which, he observed, was typical for a drug transaction.

Cox also participated in the execution of the search warrant, which took place about 5:00 a.m. the next day on November 9, 2001. His duty was to secure the back bedroom, where he found appellant and appellant's wife in bed. Both appellant and his wife had their clothes on, with appellant on top of the sheets and his wife under the sheets. Cox conducted a pat-down search for weapons of the couple. He did not discover any weapons, but did notice bulges in appellant's pockets, later determined to be cash. Cox did not find a controlled substance in the bedroom where the couple was found, but he suspected that those substances were located in other places in the house. He took appellant and his wife into the living room, where four other occupants of the house had been taken. Cox said he did not have personal knowledge that appellant was in the house during the period of his surveillance. The officer thought appellant lived at the Warren Street address, but he said that appellant had a residence listed as 620 North Bell Street in Brownfield, and appellant's automobile registration listed the Bell Street address.

Brownfield Detective Roger Baker, who also participated in the search and was part of the surveillance team, testified that on many occasions he had seen appellant at the Warren Street address and he knew that to be appellant's home. After he and Cox did not find any controlled substance in the bedroom, he was called back into the living room to make a log of the property found and seized by Agent Johnson. As he entered the living room, Agent Johnson pointed out a silver cigarette packet that contained a clear plastic

4

baggy. The bag contained a white powdered substance similar in form and substance to powdered cocaine. Agent Johnson also pointed out to him three small white rocks that appeared to be rock cocaine located underneath the couch cushions. Johnson showed him a Craftsman three-eighths deep socket that appeared to him to have been used as a crack pipe. On the living room floor, between two couches, he saw a plastic bag containing numerous small white rocks that appeared to be rock cocaine. There was money lying beside the baggies. He also saw a "blunt" lying on a pool table also located in the living room. A "blunt" is a hollowed out cigar with marijuana packed inside of it. In a room down "the hallway on the left," which appeared to be a game room, there was marijuana residue all over a table. There were also some dishes located in the room with marijuana residue on them and he could smell marijuana smoke in the house. Neither he or any other of the officers present asked appellant what the money in his possession was for, nor did he perform any tests on the items he supposed were drugs. He did not open the cigar to see what was in it. Bryant Reed, Demetrick Ward, Bruce Reed and Anthony Miller were the others who were in the house at the time of the search. Baker took possession of the baggies and other items from Johnson and delivered them to the Department of Public Safety laboratory for testing. Scott Williams, a Department of Public Safety chemist, testified that he had tested the baggie containing the small rocks and that it weighed 12.05 grams and contained cocaine.

Agent Johnson testified that he been informed from several confidential informants about drug trafficking at the West Warren address. He averred that appellant had been under surveillance for some time, beginning at appellant's mother's house on Tahoka

Road.  Johnson had observed appellant living at the Warren Street address for a couple of months prior to the search.  He said he was the lead officer during the search, which was not conducted until the early morning of November 9 because of the large volume of traffic.  He identified a video tape of the surveillance and search, and it was received into evidence.  He said that the search resulted in the discovery of two baggies of what appeared to be rock cocaine in the living room between the couches.  He also found a "blunt" on a pool table and a Winston cigarette box containing two baggies of what appeared to be powdered cocaine.  Appellant was also found in possession of $3,085 in bills of small denominations.

Johnson found a piece of plastic covering a door frame with a card table in the enclosed area which, according to him, appeared to be placed there to keep the smell of marijuana in the room.  He also found several stereos and amplifiers in one of the rooms and, in his experience, those kind of items were commonly traded for drugs.  There was also a picture of appellant and Ethel Reed in the bedroom on which were the words "Homies forever."  There were other pictures, some of which were duplicates of the pictures on the wall, including one of appellant and Ethel in the living room.  The money found on appellant consisted of ten $1 bills, 13 $5 bills, 33 $10 bills, 84 $20 bills, six $50 bills, and seven $100 bills.  These denominations indicated to Johnson that the money was the result of narcotics trafficking because it is common to sell rock cocaine in $5, $10, $20, and $40 amounts.

Johnson also said that there were two dogs outside, a Rottweiler and a Pit Bull. That type of dog is commonly kept by drug dealers to discourage intruders. Johnson also testified that the Precious Day Care Center was less than 1000 feet from where the drugs were found. The money was never claimed by anyone and the State forfeited it as the proceeds of drug sales.

Suffice it to say that the evidence, which we have set out in rather exhaustive detail, was more than sufficient to corroborate the testimony of the accomplice witness Anthony Miller. Miller testified that he began selling drugs for appellant in October of 2001, and was doing so on the night before the search warrant was executed. He averred that he would sell crack cocaine for appellant, who would pay him at the end of each week. He also said that appellant lived at the Warren Street address where the contraband was located. The evidence is amply sufficient to sustain the verdict of the jury.

Accordingly, appellant's issue is overruled and the judgment of the trial court is affirmed.

John T. Boyd
Senior Justice

Do not publish.

7