02-11-037-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00037-CR

 

 


 
 
 Eugene Harris Taylor
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

FROM Criminal
District Court No. 1 OF Tarrant COUNTY

----------

MEMORANDUM
OPINION[1]

----------

A jury
convicted Appellant Eugene Harris Taylor of indecency with a child by contact
and assessed his punishment at eight years’ confinement, probated.  The trial
court sentenced him accordingly, setting the probationary period at ten years.

Appellant
brings three points on appeal, arguing that the trial court erred by improperly
limiting his cross-examination of the complainant and by permitting a detective
to testify concerning the credibility of the complainant.  Because the trial
court did not reversibly err, we affirm the trial court’s judgment.

Facts

Appellant
was charged by indictment with one count of indecency with a child.  At the
time of the offense, the complainant, V.W., was a freshman in high school.  Appellant
was a bus driver for the school district.  Appellant told V.W. that he would be
driving one of the buses to an upcoming football game and offered to give her a
ride.

On
the day of the game, V.W. met Appellant at the school.  Appellant was scheduled
to drive an equipment truck for the band to the football game.  V.W. rode with
him.  On the drive, Appellant told V.W. that she had nice breasts and asked her
what she thought of dating older men.  He also poked her left breast.  V.W.
texted A.R., her friend and former girlfriend, during the drive and told her
what was happening.  When Appellant and V.W. arrived at the game, Appellant put
his hand inside her shirt and bra, grabbed one breast, and then touched the
other one before she moved.

After
Appellant got out of the truck, V.W. called A.R.  V.W. then left the truck and found
A.R.  V.W. told A.R. that Appellant had touched her breasts.  A.R. told her
brother’s then girlfriend, Mindy, what V.W. had told her and arranged for Mindy
to give V.W. a ride home.

At
trial, Appellant’s defense counsel asked V.W. if Mindy was “induced or
persuaded” to give her a ride because of her claim that Appellant had fondled
her and whether Mindy was aware of V.W.’s claims.  The State objected twice
that the question called for speculation, and the trial court sustained the
objections.  Appellant’s defense counsel also attempted to cross-examine V.W.
about whether she was “substantially depressed” over her breakup with A.R. when
she made the allegations.  The questioning was part of his defense strategy to
establish that V.W. had made up the allegations to elicit sympathy from A.R.  The
trial court sustained the State’s objection to that line of questioning on
grounds of relevance.

The
State asked Kevin Rogers of the Azle Police Department, who had investigated V.W.’s
allegations, whether “at any time since then, [he had] had any concerns about
the case that [he] filed?”  Appellant made a timely objection, and the trial
court sustained the objection.  The State then asked Rogers whether he had any
concerns whether the claim might be made up.  Appellant again objected.  The
trial court initially sustained the objection, but, after the State argued that
it was asking for the officer’s opinion about his investigation based on his
training and experience, the trial court allowed the question.  The State then
asked Rogers, “[B]ased on your training and experience and based on the entirety
of your investigation, did you have any concerns that this was made up?”  Rogers
answered, “No.”

Cross-examination

In his
first two points, Appellant argues that the trial court reversibly erred by
disallowing the cross-examination of V.W. regarding her motive and state of
mind in telling A.R. that he had fondled her.  The State argues that Appellant
failed to preserve his constitutional complaints for review because he raised
no constitutional complaints to the trial court.  We agree.[2] 
We nevertheless address his bare evidentiary complaints.

Defense
counsel had asked V.W. whether Mindy was aware of any of the abuse
allegations.  When the State’s objection to speculation was sustained, defense
counsel then asked whether V.W. had discussed any of the “inappropriate
activities” with Mindy.  Her answer was “No.”  When the State later asked A.R.
on direct examination whether the fondling allegations had been used to
persuade Mindy to give V.W. a ride home from the game, A.R. admitted that she
had told Mindy “the gist of it,” “that [V.W.] got sexually molested because
that’s what [V.W.] told her . . . .”

We
hold that the trial court did not err by sustaining the State’s objections to defense
counsel’s questions posed to V.W. regarding Mindy as those complained-of
questions were phrased because any awareness that Mindy had of the abuse
allegations was beyond V.W.’s personal knowledge.[3]
 When  defense counsel limited his question to whether V.W. had discussed the
activities with Mindy, that question called for information within V.W.’s
personal knowledge and was properly allowed.  Additionally, the evidence that
Appellant sought to put before the jury came in during the testimony of A.R.,
so even if the trial court had erred, such error would have been harmless.[4] 
We overrule Appellant’s first point.

As
for the questions regarding V.W.’s state of mind, defense counsel made a bill
of exceptions to clarify the evidence that he was eliciting and his purpose for
eliciting it.  He showed that V.W. and A.R. had been in a romantic relationship
that had fallen upon rocky ground.  V.W. had posted messages on her MySpace
page stating that she was horribly depressed by her loss of A.R.  Although V.W.
was vague about the time period during which she had posted this personal
information about her state of mind, she, nevertheless, had been prolific in
her expressions of pain, all of which had been admitted as part of the bill.

Appellant’s
theory was that V.W. concocted the story of being fondled in an attempt to
regain A.R.’s affections.  But after making his offer of proof, defense counsel
did not seek to admit the testimony he had elicited.  He acquiesced in the
trial court’s ruling.  In order to preserve Appellant’s complaint for appellate
review, he was required to make the trial court aware of his complaint.[5] 
As the Texas Court of Criminal Appeals has explained,

Rule of Evidence
103(a)(2) limits the scope of issues which may be appealed when evidence is
limited or excluded.  Error may not be predicated upon a ruling which . . .
excludes evidence unless a substantial right of the party is affected, and . . .
the substance of the evidence was made known to the court by offer, or was
apparent from the context within which questions were asked.  The offer of
proof may be in question-and-answer form or in the form of a concise statement
by counsel.  An offer of proof to be accomplished by counsel’s concise
statement must include a reasonably specific summary of the evidence offered
and must state the relevance of the evidence unless the relevance is apparent,
so that the court can determine whether the evidence is relevant and
admissible.  The primary purpose of the offer of proof is to enable an
appellate court to determine whether the exclusion was erroneous and harmful.  A
secondary purpose is to permit the trial judge to reconsider his ruling in
light of the actual evidence.

This
court has recognized a distinction between the general rule in Rule 103(a)(2)
and the case in which the defendant is not permitted to question a State’s
witness about matters that might affect the witness’s credibility.

In
the latter case, the defendant need not show what his cross-examination of the
witness would have affirmatively established; he must merely establish what
general subject matter he desired to examine the witness about during his
cross-examination and, if challenged, show on the record why such should be
admitted into evidence.  In such a case the trial court’s ruling has prevented
a defendant from questioning a State’s witness about subject matters which
affect the witness’s credibility, that is, matters which might show malice, ill
feeling, ill will, bias, prejudice, or animus.[6]

Common
sense suggests that if a party makes an offer of proof in an attempt to
convince a trial court that a ruling is erroneous or to persuade a trial court
to reconsider the ruling in light of the actual evidence, the party must, in
addition to showing the trial court what the actual testimony would be, explain
why the ruling is erroneous or, at a minimum, ask the trial court to reconsider
the ruling after making the offer of proof.  This requirement is based on the
theory of party responsibility explained in Reyna v. State.[7]  Because
Appellant neither explained why the trial court’s ruling was erroneous nor
asked the trial court to reconsider the ruling, he has failed to preserve his
complaint for appellate review.

We overrule Appellant’s first and second
points.

Opinion
of Credibility

In
his third point, Appellant argues that the trial court erred by permitting a
detective to testify that he had no concerns that the case was made up.  While
the investigating detective, Rogers, was testifying, the State asked him
whether he had any concerns that the complainant’s accusations were made up.  The
following exchange took place:

Q       Okay.
 And at any time since then, have you had any concerns about the case that you
filed?

[TRIAL
COUNSEL]:  Objection, improper opinion, not relevant whether the officer has
concerns.

THE
COURT:  Sustained.

[TRIAL
COUNSEL]:  Thank you.

Q       . . . Did
you have any concerns—through your investigation, did you have any concerns
about whether or not you didn’t have an offense or that this might be made up?

[TRIAL
COUNSEL]:  Same objection, Your Honor.

THE
COURT:  Sustained.

[PROSECUTOR]:
 May I respond, Judge?

THE
COURT:  Yes.

[PROSECUTOR]:
 I’m just asking—confining it to his investigation, if he ever had during his
investigation any concerns about it being made up.  I’d ask that I be allowed
to ask that question.

[TRIAL
COUNSEL]:  Your Honor, that’s an improper opinion.  It’s not relevant.  It’s
evading [sic] province of the [j]ury and—

[PROSECUTOR]:
 I would say that it was based on his training and experience.  It’s an opinion
about his investigation.

[TRIAL
COUNSEL]:  Well, in that vein, it’s given greater emphasis although there is no
expertise in that area or opinions of the validity or invalidity, no expertise
in matters as juries.

THE
COURT:  I’m going to allow the question.

Q       . . . Detective, based on your training and
experience and based on the entirety of your investigation, did you have any
concerns that this was made up?

A       No, sir.

The Texas
Court of Criminal Appeals has held that “Rule 702 does not permit an expert to
give an opinion that the complainant or class of persons to which the
complainant belongs is truthful.”[8] 
The State came very close to and indeed, may have nudged a toe across the line
in asking Rogers whether, in his expert opinion, he had any concern about “it
being made up.”  But the State did not ask any further questions about Rogers’s
opinions of the veracity of V.W.’s allegations.  And, in any event, no further
mention of Rogers’s opinion was made, either in questioning or in final
argument.  Even if we were to hold that the trial court erred by allowing the
State to inquire whether Rogers ever had the feeling that “it” or “this” was
made up, we can find nothing in the record to support a conclusion that this testimony
affected Appellant’s substantive rights in either stage of the trial.[9]  We
overrule Appellant’s third point.

Conclusion

Having
overruled Appellant’s three points on appeal, we affirm the trial court’s
judgment.

 

 

LEE ANN DAUPHINOT
JUSTICE

 

PANEL: 
LIVINGSTON,
C.J.; DAUPHINOT and GABRIEL, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  March 1, 2012









[1]See Tex. R. App. P. 47.4.





[2]See Tex. R. App. P.
33.1(a); Mendez v. State, 138 S.W.3d 334, 342 (Tex. Crim. App. 2004); see
also Anderson v. State, 301 S.W.3d 276, 279 (Tex. Crim. App. 2009).





[3]See Tex. R. Evid.
602; Kelly v. State, 321 S.W.3d 583, 598 (Tex. App.—Houston [14th Dist.]
2010, no pet.).





[4]See Tex. R. App. P.
44.2(b); Solomon v. State, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001); Johnson
v. State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998); King v. State,
953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing Kotteakos v. United
States, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)).





[5]See Tex. R. App. P.
33.1(a)(1), (2), 33.2(a); Lovill v. State, 319 S.W.3d 687, 691–92 (Tex.
Crim. App. 2009); Mendez, 138 S.W.3d at 341.





[6]Holmes v. State,
323 S.W.3d 163, 168 (Tex. Crim. App. 2009) (emphasis added) (citations and
internal quotation marks omitted).





[7]168 S.W.3d 173, 177 (Tex.
Crim. App. 2005).





[8]Yount v. State, 872
S.W.2d 706, 712 (Tex. Crim. App. 1993).





[9]See Tex. R. App. P.
44.2(b); Solomon, 49 S.W.3d at 365; Johnson, 967 S.W.2d at 417;
King, 953 S.W.2d at 271.