

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-17-00132-CR
_____

CLIFFORD BELL, Appellant

V.

The State of Texas

---

On Appeal from the 367th District Court
Denton County, Texas
Trial Court No. F15-1523-367

---

Before Sudderth, C.J.; Gabriel and Pittman, JJ.
Memorandum Opinion by Justice Pittman

## MEMORANDUM OPINION

In mid-February 2015, Appellant Clifford Bell abandoned two bags of unpaid-for steaks in the vestibule between Wal-Mart's inner and outer doors, walked away before Wal-Mart's asset-protection agent could talk with him, and confessed the theft to a police officer a few minutes later. Two years later, a jury convicted him of theft in an amount less than $1,500, with two prior theft convictions, *see* Act of May 29, 2011, 82nd Leg., R.S., ch. 1234, § 21, 2011 Tex. Sess. Law Serv. 3309, 3310 (amended 2015, 2017) (current version at Tex. Penal Code Ann. § 31.03,[1] and the trial court sentenced him to two years' confinement in state jail. *See* Tex. Penal Code Ann. § 12.35 (providing that state jail felony punishment range is not more than two years or less than 180 days and up to a $10,000 fine).

In a single point, Bell complains that the trial court erred by admitting two additional, non-jurisdictional extraneous prior theft convictions during the guilt-innocence phase of his trial. Bell argues that these convictions were not admissible under rule of evidence 404(b)[2] to show intent because he never raised lack of intent as

---

[1]Former penal code section 31.03(e)(4)(D) provided that an offense was a state jail felony if the value of the stolen property was less than $1,500 and the defendant had been previously convicted two or more times of any grade of theft. Act of May 29, 2011, 82nd Leg., R.S., ch. 1234, § 21, 2011 Tex. Sess. Law Serv. at 3310 (amended 2015, 2017). Bell stipulated to the jurisdictional prior theft convictions listed in the indictment.

[2]Rule of evidence 404(b) states, in pertinent part, that evidence of a crime is not admissible to prove the conformity of a person's character therewith but "may be admissible for another purpose, such as proving motive, opportunity, intent,

a defensive theory and that, contrary to rule of evidence 403's balancing test,[3] they "at best[] marginally added to already voluminous evidence of intent."

Assuming, without deciding, that the trial court erred by admitting the two extraneous theft convictions, we conclude that on this record, any such error was harmless. *See* Tex. R. App. P. 44.2(b).[4]

The jury heard from two Wal-Mart asset-protection employees and the arresting police officer, among others, and viewed the store's surveillance footage

---

preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Tex. R. Evid. 404(b).

[3]Rule of evidence 403 states that a court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence. Tex. R. Evid. 403.

[4]Generally, the erroneous admission of evidence is nonconstitutional error governed by rule 44.2(b) if the trial court's ruling merely offends the rules of evidence. *See Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001). Under rule of appellate procedure 44.2(b), we disregard the error if it did not affect the appellant's substantial rights. *Id.*; *see Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh'g). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)). Conversely, an error does not affect a substantial right if we have "fair assurance that the error did not influence the jury, or had but a slight effect." *Solomon*, 49 S.W.3d at 365; *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). In making this determination, we review the record as a whole, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, and the character of the alleged error and how it might be considered in connection with other evidence in the case. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). We may also consider the jury instructions, the State's theory and any defensive theories, whether the State emphasized the error, closing arguments, and even voir dire, if applicable. *Id.* at 355–56.

showing Bell's progress through the store from entry to exit except for the act of concealment, which occurred in the menswear department. One of the Wal-Mart employees testified that he saw Bell walk through the menswear department—an area frequented by shoplifters because of its lack of surveillance cameras near the changing rooms—with a cart full of steaks worth $156.33 and then pull out two empty Wal-Mart bags, put the steaks in the bags, and place the bags back in the cart. Bell next headed to the front of the store, but when he arrived in the cash register area—an opportunity to pay for the merchandise—he removed both bags, ditched the cart, and walked to the other side of the store. Bell then crossed the "last point of sale," i.e., the first set of doors, with the bags of steaks. No one from Wal-Mart gave Bell consent to leave the store without paying for the steaks.

When Wal-Mart's asset-protection employees attempted to approach Bell in the vestibule area between the first and second set of the store's doors, he dropped the bags, told them that he had not done anything, and walked out of the store. One of the employees called the police while the other kept his eyes on Bell from the parking lot. A nearby patrol officer responded to the call, identified Bell based on the description of his clothing, stopped him, and asked him what happened at Wal-Mart. Bell told her that he had "messed up" and that he had taken some steaks because he

4

needed the money and was going to sell them.[5]  Bell was arrested and transported to jail; when he was searched at the jail, police found a single penny on him and no other means to pay for the steaks.  Only after all of the above evidence was admitted did the prosecutor seek and receive permission to use two of Bell's prior theft convictions under rule of evidence 404(b), arguing that Bell had put his intent into issue by trying to show that he did not have the intent to deprive Wal-Mart of the steaks based on his dropping the bags before he left the store.

The overwhelming evidence of Bell's guilt set out above, the lack of any demonstrable prosecutorial misbehavior during voir dire or trial,[6] and the extraneous-offense limiting instruction in the jury charge lead us to conclude that any error in the admission of the two extraneous offenses had no substantial or injurious effect on the jury's verdict and could not have affected Bell's substantial rights.  *See King*, 953 S.W.2d at 271.  Thus, we disregard the error, *see* Tex. R. App. P. 44.2(b), overrule Bell's single point, and affirm the trial court's judgment.

---

[5]The trial court denied Bell's motion to suppress his statements made to the officer after he told her that he messed up.  Bell does not appeal the denial of his motion to suppress.

[6]The prosecutor argued during closing arguments that the evidence showed beyond *all* doubt—based on 90% of the offense having been caught on videotape and Bell's admission of guilt to the officer—that Bell had stolen steaks from Wal-Mart by exercising control over them in the store, taking them past the cash registers without paying, and taking them into the store's vestibule without the consent of store employees.  The prosecutor mentioned the extraneous offenses during the first part of his closing argument, but he spent more time emphasizing the evidence that was directly related to the instant offense.

/s/ Mark Pittman
Mark Pittman
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  January 31, 2019