In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-20-00280-CR
_____


JUSTIN ALLISON, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
Jefferson County, Texas
Trial Cause No. 19-31221

MEMORANDUM OPINION

After a jury found Justin Allison guilty of engaging in deviate

sexual intercourse with *Blaire*,[1] an inmate at the Jefferson County

_____

[1]To protect the privacy of the complaining witness named in the indictment, we refer to her by using a pseudonym. *See* Tex. Const. art. I, § 30(a)(1) (granting crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process").

1

Correctional Facility, Allison appealed.[2] Allison raises two issues in his brief, one complaining about a question the prosecutor asked him when she cross-examined him in the trial, the other complaining about an argument the prosecutor made in summation. Because we conclude Allison's issues lack merit, we will affirm.

Background

Allison was working as a correctional officer at the Jefferson County Correctional Facility (the Facility) in October and November 2018 when Blaire claimed that Allison engaged in acts of deviate sexual intercourse with her. In 2019, a Jefferson County grand jury indicted Allison, alleging that on or before November 5, 2018, and while employed at the Facility, Allison intentionally engaged in deviate sexual

---

[2]The indictment alleges the offense occurred on or about November 5, 2018. Although the improper sexual activity with an inmate statute has since been amended and the penalty for the offense increased, when Allison committed the offense, the offense in 2018 was punishable as a Class A misdemeanor. *Compare* Act of June 19, 2015, 84th Leg., R.S., ch. 1136, § 1(b), 2015 Tex. Gen. Laws 1136, *with* Tex. Penal Code Ann. § 39.04(b) (West Supp. 2022) (increasing the penalty for the offenses in this category effective January 1, 2021).

intercourse with Blaire while Blaire was an inmate at the Facility. Allison pleaded not guilty.

Viewed in the light most favorable to the verdict, the evidence shows Blaire was arrested and then jailed in July 2018 after police charged her with committing aggravated assault. The testimony shows Allison was charged with stabbing her former boyfriend with a knife. Blaire was jailed at the Jefferson County Correctional Facility, where she remained while awaiting her trial.

The State called eight witnesses, including Blaire, to prove Allison committed the crime alleged in the indictment. Since Allison's appeal is limited in scope, we limit our discussion of the testimony to the testimony needed to resolve Allison's appeal. In the appeal, Allison's complaints revolve around the testimony the jury heard from Allison and from Blaire.

When Blaire testified, she said that she and Allison began having conversations in October 2018, either when she was in the Facility's yard or inside her cell. At one point, according to Blaire, their conversations became sexual. Blaire said Allison let her know "there was a place off camera to where things could happen[.]" In late October 2018, Allison

3

took Blaire to an area that could not be viewed by those who monitored the Facility's cameras. Blaire testified that while she and Allison were alone together in an area beyond camera view, Allison unzipped his pants, and she performed oral sex. Blaire testified the same thing happened again in November 2018.

Around a week after the second incident, Blaire met with the Jefferson County Sheriff. Blaire explained the sheriff asked her "about your relationship with Justin Allison." At first, Blaire told the sheriff she had no contact with Allison other than as "inmate to officer." Blaire also told the sheriff she didn't perform oral sex on Allison. But when the sheriff told Blaire she had a letter Blaire had written about what Blaire claimed occurred, Blaire agreed that she told the sheriff (and later told a Jefferson County investigator, Tommy Savoie, who also testified in the trial) "what happened[.]"

On cross-examination, Blaire admitted the aggravated assault charges, which the State filed against her for stabbing her former boyfriend, were reduced from a felony to a Class-A misdemeanor assault based on a plea agreement, which Blaire made with the State. Blaire attributed the fact she reached the plea agreement to the County's desire

4

to avoid paying for a surgery she needed to her arm, which Blaire testified her former boyfriend had broken shortly before she was arrested and charged with aggravated assault. Blaire described the plea agreement she reached, reducing the aggravated assault from a felony to a misdemeanor and her serving a sentence of time served, as "pretty great." Despite Blaire's testimony that she didn't know why the State was willing to give her the deal, Blaire mentioned her former boyfriend was not helping the State with its efforts to prosecute her when the State agreed to the deal.

Allison was the sole witness called to testify in his defense. For his part, Allison denied he had had an inappropriate relationship with Blaire. Still, Allison said he knew Blaire had written notes claiming they engaged in an inappropriate relationship. According to Allison, when he got the notes, he brought them "upstairs in the picket and showed those guys . . . to cover myself and to show, like, do you see what this is, you know." Allison explained he wasn't worried about the notes because he hadn't done "anything wrong."

Allison testified that what Blaire had claimed about the two of them having a relationship was "[u]ntrue." When Allison's attorney asked him

why "she would say something like that[,]" Allison responded: "I mean, basically, get herself out of trouble." Then Allison's attorney had Allison provide the jury with further context for his response. In response to those questions, Allison told the jury that Blaire had asked him to take an affidavit to her former boyfriend, which she wanted to use if her boyfriend signed the affidavit to get the assault charges from the incident where Blaire stabbed her boyfriend dropped. Allison testified that when Blaire asked him to help her, he refused. Allison also testified that when he refused Blaire's request, he wasn't "mean" or "angry" even though what Blaire requested would have required him to break the law.

In summation, Allison's attorney argued "[Blaire] concocted this idea to get him in trouble at the height of the "Me Too Movement" [because Allison refused Blaire's request to take the affidavit to her former boyfriend]." The two primary themes the defense used in Allison's defense were that Blaire was not a credible witness and that she fabricated the story about the sexual encounters to obtain the leverage she needed to obtain a plea so she could avoid the risk of a conviction and lengthy sentence on being convicted of aggravated assault. When the jury returned with its verdict, it found Allison guilty. In punishment, the jury

6

found Allison should serve a 180-day sentence. However, the jury recommended that Allison be placed on probation.[3] The trial court signed a judgment consistent with the jury's verdict. The trial court suspended Allison's sentence, and then exercised its authority to extend the probation period from eighteen months to three years.[4]

Error in Admitting Evidence

In Allison's first issue, he argues the trial court erred by allowing the prosecutor to ask him a question requiring him to speculate about why Blaire would have had a reason to deny having sexual contact with him when she initially spoke to the sheriff rather than just "spill[ing] the beans." Allison contends the question was improper because it required Allison to speculate about Blaire's motives. The record shows Allison's attorney objected to the prosecutor's question, but the trial court overruled the objection.

We review a trial court's decision admitting evidence relevant to the complaining witness's motive to testify against the accused for abuse of

---

[3]*See* Act of June 19, 2015, 84th Leg., R.S., ch. 1136, § 1, 2015 Tex. Gen. Laws 1136 (amended 2021) (current version at Tex. Penal Code Ann. § 39.04(b)).

[4]*See* Tex. Code Crim. Proc. Ann. art. 42A.055.

discretion.[5] An abuse of discretion occurs when the trial court's ruling falls outside the zone of reasonable disagreement.[6] If the trial court's ruling is correct under any theory of law that applies, we will not reverse the judgment in the appeal.[7] Under the abuse of discretion standard, we may not reverse the trial court's ruling unless the record shows it was arbitrary, unreasonable, or made without reference to guiding rules and principles.[8]

Texas Rule of Evidence 602 and Rule 701 apply when a party objects claiming a witness's testimony is speculative.[9] Rule 602 requires that a witness's testimony be predicated on the witness's personal knowledge.[10] And Rule 701 permits opinion testimony from a lay witness if the opinion is "rationally based on the witness's perception" and "helpful to clearly understanding the witness's testimony or determining a fact issue in issue."[11] Thus, even though a witness "cannot possess personal knowledge of another's mental state, he may possess personal

---

[5]*Johnson v. State,* 490 S.W.3d 895, 908 (Tex. Crim. App. 2016).
[6]*Id.*
[7]*Id.*
[8]*State v. Lerma,* 639 S.W.3d 63, 68 (Tex. Crim. App. 2021).
[9]*Fairow v. State,* 943 S.W.2d 895, 897-99 (Tex. Crim. App. 1997).
[10]*See* Tex. R. Evid. 602.
[11]*See id.* 701.

knowledge of facts from which an opinion regarding mental state may be drawn."[12]

From the beginning in his opening statement, Allison's attorney placed Blaire's motive in issue. This is what Allison's attorney said:

> You're going to learn that [Blaire] wanted Mr. Allison to reach out to her boyfriend who was in another part of the jail and 'kite' him. 'Kite' means get him a letter. And what she wanted was she wanted this letter that would get him, convince him, to drop the charges so she would no longer be facing 25 years to life. That's what she wanted; and when Mr. Allison wouldn't do it, she concocted a scheme to destroy his career. That's going to be the evidence. And it also helped her try to get herself out of trouble, and you're going to hear about that.

In the State's case-in-chief, Allison's attorney cross-examined Blaire, seeking to diminish her credibility and to establish she was a liar, capable of fabricating charges against Allison to obtain the leverage she needed to obtain a reduced sentenced in return for a plea. When Allison's attorney cross-examined Blaire in the State's case-in-chief, the attorney asked her about her prior criminal convictions, the time she faced if convicted of stabbing her former boyfriend, and the plea deal she reached with the State. Allison's attorney got Blaire to admit that when she

---

[12] *Solomon v. State*, 49 S.W.3d 356, 364 (Tex. Crim. App. 2001).

initially spoke to the sheriff, she told the sheriff she didn't know Allison. But in the next question, the attorney asked Blaire if she wanted her boyfriend to drop the assault charges because the charges "were scary[.]" Blaire responded: "Heck, yea."

As is readily seen, there's no doubt the defense accused Blaire of fabricating the charges Blaire made against Allison in an effort to obtain leverage with the State to get a favorable plea. But the problem with Allison's theory is that if Blaire set Allison up from the start, why would Blaire have denied knowing Allison when the sheriff asked her if she knew him? Isn't it more plausible that Allison, when offered the opportunity, would have at least told the sheriff she knew Allison and isn't it likely she would also have volunteered that the two of them engaged in sexual acts?

When Allison took the stand, the prosecutor gave Allison the chance to explain why Blaire might have had a motive to deny knowing her if by then she had already concocted a scheme to get herself out of trouble by destroying his career. After Allison testified in his defense, the prosecutor sought to expose the flaw the State perceived with Allison's theory by asking Allison the following questions:

10

[Prosecutor]: So, you are aware that - - and you heard [Blaire's] testimony that when [she] first was called into the sheriff's office, that when she was asked about the incident, that she denied everything?

[Allison]: Yes.

[Prosecutor]: So, if she concocted the story against you for something you did, can you think of a reason why she wouldn't have gone in there and just spilled the beans?

[Defense Attorney]: Objection: Calls for speculation, Judge.

[Court]: Overruled.

[Prosecutor]: Can you think of a reason? If I concoct a story against you, why wouldn't I go in there and spill the beans? Why would I go in there and deny everything?

[Allison]: Because she knew it wasn't true.

[Prosecutor]: But you're saying she was out to get you, right?

[Allison]: Yes.

[Prosecutor]: So, if it wasn't true and I'm out to get you, why wouldn't I go in there and spill the beans about whatever story it is I'm trying to make up?

[Allison]: I have no idea.

As a correctional officer at the jail, Allison had personal knowledge of sufficient facts about the reasons an inmate like Blaire might lie to an official like the sheriff in return for a favorable sentence or other favorable treatment while in jail. Allison also had personal knowledge

11

about the dates and locations Blaire was claiming the sexual encounters between the two of them occurred, the circumstances surrounding Blaire's request to "kite" the affidavit she wanted her boyfriend to sign, and Allison heard Blaire testify about the favorable plea bargain and sentence she received in exchange for her plea. The jury was free to give as much or as little weight to Allison's opinion about Blaire's motive—that she was out to get him for refusing to help her—as the jury saw fit.[13]

Allison's testimony concerning his views regarding what motives Blaire would have had to harm him and his career was also helpful to the jury since Allison's opinion is nothing more than a shorthand rendition of the defense's theme that began with opening statement—that Blaire "concocted a scheme" to "destroy [Allison's] career" and "to get herself out of trouble."[14] We conclude the trial court had the discretion to admit the opinion Allison formed about why Blaire might have wanted to concoct a story to harm his career. Allison's first issue is overruled.

---

[13] *See id.*
[14] *Id.*

Jury Argument

Next, Allison complains that in closing argument, the trial court erred by allowing the prosecutor to argue that he was fired by Jefferson County with no explanation when he first worked as a correctional officer at the Facility, which was in 2015.

During the trial, Allison testified he worked at the Facility as a correctional officer between February and December 2015. Allison testified he left the job in December when he "was forced to resign." In closing argument, Allison's attorney objected to the prosecutor's argument that Allison was fired with no explanation on the grounds that the argument was "well outside the record." The trial court overruled the objection, and it instructed the jury "to recall the evidence and remember to stay within the confines of the evidence during your deliberations."

We review rulings on objections to improper jury arguments for abuse of discretion.[15] Generally, proper closing arguments fit into one of the following four categories: (1) summation of the evidence, (2)

---

[15]*Milton v. State,* 527 S.W.3d 234 (Tex. Crim. App. 2004).

13

reasonable deductions from the evidence, (3) answers to an argument of opposing counsel, and (4) pleas for law enforcement.[16]

According to the State, the argument the prosecutor made was permissible because it falls into the second category, a reasonable deduction from the evidence admitted in the trial. The State concludes the argument about Allison being fired without explanation was a reasonable deduction from Allison's testimony stating he was forced to resign.

Under Texas law, prosecutors are allowed wide latitude to draw inferences from the evidence and their arguments based on the evidence offered in good faith.[17] Assuming those conditions are met, juries may choose to accept or reject the inferences a prosecutor has drawn from the evidence based on the prosecutor's closing argument.[18]

It's undisputed the jury heard Allison testify that while working as a correctional officer at the Facility, he was forced to resign. Allison also testified nobody ever told him why he was being forced to resign, and when he asked questions, they wouldn't answer. So given the evidence

---

[16]*Freeman v. State*, 340 S.W.3d 717, 727 (Tex. Crim. App. 2011).
[17]*See Cantu v. State*, 939 S.W.2d 627, 633 (Tex. Crim. App. 1997).
[18]*Gaddis v. State*, 753 S.W.2d 396, 400 (Tex. Crim. App. 1988).

before the jury and considering it from the trial court's standpoint, it was within the trial court's discretion whether to allow the argument Allison complains about since the inference that Allison was fired with no explanation is arguably reasonable.

Even though Allison doesn't say so, his brief implies the prosecutor used the term "fired" as the equivalent of meaning "fired for cause." But we don't agree that's necessarily what the term means. In the employment context, *fired* just means "discharge from employ or service."[19] To be sure, an employee's formal termination with it was a termination for cause may have consequences that are severe in other contexts like whether an employee may obtain unemployment compensation, but the term *fired* does not always mean fired for cause. As commonly used, there's no practical distinction between an employee's being fired and being forced to resign—in both cases, the employee is discharged from the employer's employ or service. Moreover, the prosecutor never claimed that Allison was fired because he had any inappropriate sexual contacts with any inmates in 2015.

---

[19] WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 854 (2002).

And to prevent the jury from considering any evidence that had not been admitted in the trial, the trial court instructed "the jury to recall the evidence and remember to stay within the confines of the evidence during your deliberations" immediately after overruling the attorney's objection. Thus, the trial court reminded the jury not to go outside the record when the prosecutor presented the argument that Allison complains about in his appeal, and there was no evidence before the jury that in 2015 Allison was fired for cause.

We conclude no abuse of discretion occurred since the trial court's ruling falls in the zone of reasonable disagreement. Issue two is overruled.

## Conclusion

Having overruled both of Allison's issues, the trial court's judgment is

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on November 21, 2022
Opinion Delivered February 22, 2023
Do Not Publish
Before Golemon, C.J., Horton and Wright, JJ.