**Affirmed and Opinion Filed August 27, 2024**



In The
# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-23-00459-CR

**ADAM JON RESING, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 366th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 366-82677-2022**

## MEMORANDUM OPINION

Before Justices Partida-Kipness, Pedersen, III, and Carlyle
Opinion by Justice Pedersen, III

A jury found appellant Adam Jon Resing guilty of Invasive Visual Recording. The trial court assessed his punishment at two years' confinement, suspended for five years of community supervision. In two issues, appellant challenges the trial court's judgment, arguing that the evidence is insufficient to support the jury's verdict and that the trial court abused its discretion by admitting two videos found on appellant's personal computer. We affirm the trial court's judgment.

## Background

The events at issue occurred in a McKinney Hobby Lobby store on August 3, 2019. The complainant, nineteen-year-old Alyssa Gigley (Alyssa), was standing in line with her mother, Hannah Gigley (Hannah), waiting to check out their purchases. Constance Woods was also a customer at Hobby Lobby. Woods approached Hannah and told her that, while standing in line at the next checkout register, Woods had seen a man take a video or a picture after putting his phone under Alyssa's skirt.[1]

Woods testified that her eye was caught by a man in the next checkout lane crouching down behind the young girl. Initially she thought he must have dropped something, but as she watched, he laid his phone on top of a book—or "something like a book"—and reached forward, putting the phone under the girl's skirt. Woods could tell the phone's camera was on, because she could see images moving on the screen as he moved the phone. And she could see the touchscreen; it was pointed upward. Woods could not tell whether there was a light on the phone indicating that he was recording images. She was approximately five feet away from the man as she watched him.

Woods identified appellant as the man she had seen. She said that while he had the phone under the girl's clothes, he "just kept looking around." As he did, he made eye contact with Woods and then immediately got up and walked away toward the back of the store.

After Woods told Hannah what she had seen, Hannah called for the store manager. The group did not see appellant, so they waited together at the front of the store, knowing he would need to leave that way. Minutes later, when he did approach the front of the store, Hannah demanded to see his phone.[2] Appellant "turn[ed] beet red and he shook his head and said, 'I don't like this.'" The he ran out of the store, followed by Hannah and the store manager.

During Woods's testimony, the jury watched the store's security recordings, which indicated appellant was in the store less than five minutes. The recording showed appellant arriving. Woods identified the Gigleys standing in the checkout line and then identified appellant coming up behind them approximately one minute after he walked into the store. The video showed him crouch down twice and then get up and walk toward the back of the store. Minutes later, a camera showed him running toward the exit. As he ran through the interior doorway into the lobby, he threw down some kind of printed material.

The police issued a press release that included a picture of appellant from the security video. They received tips identifying appellant, and he was arrested on August 15, 2019. Police obtained warrants to inspect his phone and computer. They

---

[1] Alyssa was wearing what witnesses call a "romper." She described it at trial as "a very loose romper." And she testified that if someone had a camera looking up under it, "it would have around the same effect as a dress being that it is so flowy."

[2] Appellant's brief calls the group "an angry mob" and "a heated mob." The only testimony is less dramatic. Woods testified the group had questions, but no one was yelling. Hannah did concede that she was not calm.

were unable to get into his phone, which was password protected. They did extract two brief "up-skirt videos" from the computer, which data indicated were taken in the DFW area in 2017.

The jury found appellant guilty of Invasive Visual Recording. The judge assessed his punishment at two years' confinement, suspended for five years of community service. This appeal followed.

## Discussion

We address appellant's two issues in turn.

### *Sufficiency of the Evidence*

In his first issue, appellant argues that the evidence is insufficient to support the jury's guilty verdict. Specifically, he contends that the State failed to produce any evidence that appellant *recorded* the complainant. We review appellant's challenge by examining the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We may not evaluate the weight of the evidence or replace the factfinder's judgment with our own. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). Instead, we defer to the jury's responsibility "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts

to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (quoting *Jackson,* 443 U.S. at 318–19).[3]

Appellant's indictment charged him with Invasive Visual Recording, alleging that he did:

> then and there, with intent to invade the privacy of Alyssa Gigley, hereafter styled the complainant, and without the consent of the complainant, record by electronic means a visual image of the genitals, pubic area, anus, and buttocks of the complainant, and the complainant had a reasonable expectation of privacy that the genitals, pubic area, anus, and buttocks of the complainant were not subject to public view.

*See* TEX. PENAL CODE ANN. § 21.15(b)(1). The indictment tracked section 21.15's language with a single change:  according to the statute, a violation can occur if the image is recorded, broadcast, or transmitted; the State charged appellant only with recording the image.

Appellant argues that there is no evidence that he recorded the complainant. He points to Woods's testimony that she could not see from her vantage point whether a light indicated the phone was recording. And the police who investigated the event did not locate a recording of the complainant on appellant's phone or computer.

---

[3] This standard speaks to the legal sufficiency of the evidence. Appellant also argues the evidence is factually insufficient to support the verdict, but our courts have not recognized a claim for factual sufficiency of the evidence since 2010. *See Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) ([T]he *Jackson v. Virginia* legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt.).

But juries are permitted to make reasonable inferences from the evidence presented at trial. *Hooper v. State*, 214 S.W.3d at 14. Indeed, circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Id.* at 13. We conclude that the following evidence, direct and circumstantial, could support the jury's conclusion that appellant did in fact record the complainant:

- The store's security video established that appellant entered the store and, within approximately one minute, he was standing and then crouching behind the complainant, although neither the recording nor testimony suggested he had a purchase to make in the checkout area.

- Woods testified that—from approximately five feet away—she saw appellant crouch down behind the complainant, place his phone on some type of printed material, and reach forward to place the phone under the complainant's clothing. The touch screen was facing up, and Woods was able to see images on the screen as appellant moved the phone.

- While appellant held the phone forward under the complainant's romper, he was looking around. When Woods made eye contact with appellant, he quickly got up and walked away toward the back of the store.

- When faced with questions from the people involved and the store manager, appellant ran out of the store. The security video shows him discarding some kind of printed material as he runs through the interior doorway.

Given this evidence, a rational juror could have inferred that appellant was recording complainant as he held his phone under her clothes and looked around; indeed, a rational juror could have concluded that was the only reasonable inference that could be drawn from his conduct. Although appellant had placed himself in the line for checkout soon after entering the store, he hurriedly left that area after making

–6–

eye contact with Woods; and faced with questions about his conduct, he raced out of the store. It is well settled that evidence of flight evinces a consciousness of guilt. *Fentis v. State,* 582 S.W.2d 779, 780–781 (Tex. Crim. App. 1976). Although appellant asserts that he did not flee from police, the manager was an authority figure within the store, and appellant did not wait for the police to arrive. A rational juror could have viewed both appellant's hurried departure from the checkout area and his flight from the store as circumstantial evidence of his guilt.

After examining the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found beyond a reasonable doubt that appellant did record the complainant. *See Jackson*, 443 U.S. at 319. Despite the inability of the State to produce the actual recording, the evidence was legally sufficient to support the jury's verdict. *See Vazquez v. State*, No. 05-16-01122-CR, 2017 WL 1710583, at *2 (Tex. App.—Dallas May 3, 2017, no pet.) (mem. op., not designated for publication).

We overrule appellant's first issue.

*Admission of Extraneous Offenses*

In his second issue, appellant contends the trial court abused its discretion by admitting two videos extracted from his computer by the police. The videos are approximately three and nine seconds in length. They were created two years before the incident at Hobby Lobby and appear to show the same kind of up-skirt recording at issue in this appeal. In a two-part, relatively lengthy hearing on their admissibility,

appellant argued that the videos were inadmissible character or "bad act" evidence, offered to show appellant's propensity to commit this offense. *See* TEX. R. EVID. 404(b)(1). The State argued primarily that the videos were offered to rebut a defensive theory, i.e., whether appellant actually made a recording. In the end the trial court admitted the videos pursuant to Rule 404(b)(2), instructing the jury that:

> During the trial, you heard evidence that the defendant may have committed wrongful acts not charged in the indictment. You are not to consider that evidence at all unless you find, beyond a reasonable doubt, that the defendant did, in fact, commit the wrongful act. Those of you who believe the defendant did the wrongful act may consider it.
>
> Even if you do find that the defendant committed a wrongful act, you may consider this evidence only for the limited purpose of determining the motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or accident, or to rebut a defense theory, if any, in connection with the offenses alleged against the defendant in the indictment. You may not consider this evidence to prove that the defendant is a bad person and for this reason was likely to commit the charged offense. In other words, you should consider this evidence only for the specific, limited purposes described above. To consider this evidence for any other purpose would be improper.

*See* TEX. R. EVID. 404(b)(2). We review a trial court's ruling on the admissibility of extraneous offenses under an abuse-of-discretion standard. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009).

Appellant contends that (1) the trial court expanded the scope of possible grounds of exceptions to the rule beyond what the State had argued, (2) the videos were not similar enough to the conduct charged here to qualify under Rule 404(b)(2)'s exceptions, and (3) the jury could not have concluded—as the instruction

required—that appellant had recorded the earlier videos, because the State offered no evidence that he had.

We note at the outset a threshold concern with admission of these videos when the State had no evidence that appellant had recorded them. The State responds that the "bad act" at issue was actually not recording the extraneous videos, but merely possession of them. But if that is so, how does this evidence rebut the defensive theory that appellant did not record the complainant?

Nevertheless, even if we assume—without deciding—that the extraneous videos were improperly admitted, we conclude that any error was not harmful. Our rules of appellate procedure direct that a nonconstitutional error that does not affect substantial rights must be disregarded. TEX. R. APP. PRO. 44.2(b). "[T]he evidence of a defendant's guilt is a factor to be considered in any thorough harm analysis." *Motilla v. State*, 78 S.W.3d 352, 358 (Tex. Crim. App. 2002). We also consider "the character of the alleged error and how it might be considered in connection with other evidence in the case." *Id.* at 359. Without reliance on the extraneous videos, we have concluded that ample evidence supported the jury's finding of guilt in this case.[4] The most significant evidence in that analysis is eyewitness testimony

---

[4] A legal sufficiency review of the evidence "evaluate[s] all of the evidence in the record, both direct and circumstantial, whether admissible or inadmissible." *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). However, in identifying evidence above that supported the jury's finding that appellant did in fact record the complainant, we did not list these videos, because we are not persuaded that they would have helped convince the jury of that fact.

describing the conduct of appellant in crouching behind the complainant, reaching forward, and placing his phone face up under her clothing. According to the witness, the phone was on and appellant was looking around while he held the phone aimed under the complainant's clothes. The jury could reasonably have concluded that the only possible reason for appellant to act as he did was to obtain a recording of what the camera was viewing. In contrast, the seconds-long extraneous videos lacked context and connection to appellant compared to the eyewitness testimony.

Our review of the record as a whole gives us a fair assurance that admission of these extraneous videos did not influence the jury or would had have but a slight effect. *See Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001). The trial court did not abuse its discretion by admitting them. We overrule appellant's second issue.

## Conclusion

We affirm the trial court's judgment.

230459f.u05

Do Not Publish
Tex. R. App. P. 47

/Bill Pedersen, III//
BILL PEDERSEN, III
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ADAM JON RESING, Appellant

No. 05-23-00459-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 366th Judicial District Court, Collin County, Texas Trial Court Cause No. 366-82677-2022.

Opinion delivered by Justice Pedersen, III. Justices Partida-Kipness and Carlyle participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee the State of Texas recover its costs of this appeal from appellant Adam Jon Resing.

Judgment entered this 27th day of August, 2024.